EATON, CRANE AND PIKE COMPANY *vs.* COMMONWEALTH.

UNITED STATES ENVELOPE COMPANY *vs.* SAME.

Suffolk.   November 28, 1921. — April 22, 1922.

Present: RUGG, C.J., BRALEY, CROSBY, CARROLL, & JENNEY, JJ.

*Tax*, Excise, Corporation.   *Corporation*, Taxation.   *Interstate Commerce.*

In assessing, under the provisions of Sts. 1918, cc. 253, 255; 1919, c. 342, the amount of excise tax to be paid by a corporation doing business both inside and outside of the Commonwealth and also engaging in interstate commerce, it was proper first to deduct from the entire amount of the net income of the corporation the exemption of $2,000 and interest paid to it on obligations of the United States and then the amount of its income derived from interstate commerce, and to compute the tax upon such proportion of the remaining sum as, in the words of St. 1918, c. 255, § 3, "the fair cash value of its real estate and tangible personal property in this state . . . is to the fair cash value of its entire real estate and tangible personal property. . . ."

The statutes above described providing no adequate machinery for the separation of income properly attributable to intrastate commerce from that attributable directly to interstate commerce, it was not improper, before computing the tax, to deduct from the total of the net income of the corporation all of the net income from sales made in this Commonwealth to purchasers outside the Commonwealth followed by a delivery in the course of interstate commerce, although the goods were manufactured, sales were made, title was passed, accounts were kept, payments were received, and deliveries were made to carriers for transportation to customers without the State, all in this Commonwealth.

Two PETITIONS, filed in the Supreme Judicial Court on December 24, 1919, one of which was afterwards amended, by two corporations organized under the laws of the State of Maine, each maintaining a factory or factories as well as warehouses and sales offices in Massachusetts and each having real and personal property in other States which it used in connection with the manufacture and sale of stationery, praying that the war bonus taxes, so called, levied under St. 1919, c. 342, which revived and reenacted St. 1918, cc. 253, 255, be "abated, in whole or part, and that the Treasurer and Receiver General of the Commonwealth may be, by the decree of this court, ordered to pay to the petitioner the amount of said tax, or so much thereof as shall have been found to have been so illegally enacted, with interests and costs."

Both cases came on to be heard before *Pierce*, J., who, at the request of the parties, reserved each case for the determination of the full court on the pleadings and agreed statement of facts, material portions of which are stated in the opinion.

After rescript, the cases were further heard upon the same records and the rescripts by *Crosby*, J., by whose order final decrees were entered, adjudging in the first case that, of the tax assessed and paid by the petitioner, $5,224.24 was illegally assessed and was abated, and in the second case that $6,119.32 was illegally assessed and was abated; and those sums respectively were ordered to be repaid with interest and costs.

From the agreed facts before the court at both hearings, it would seem that the computations which formed the basis of the decree in the first case was as follows:

| | |
|---|---:|
| Net income, less U. S. bond interest and $2,000 exemption, | $674,178 48 |
| Deduct interstate commerce income, | 644,967 97 |
| Income to be apportioned, | $29,210 51 |
| Apportioned to Massachusetts, eighty-one per cent of above, | $23,660 50 |
| Tax, one per cent, | 236 60 |
| Sum abated, | 5,224 24 |

The computation that formed the basis of the decree in the second case would seem to be as follows:

Net income, less U. S. bond interest and $2,000
   exemption,   ............................. $1,402,003 85
Deduct interstate commerce income,   .......... 999,880 64
Income to be apportioned, ................... $402,115 21
Apportioned to Massachusetts, sixty-one and two
   tenths per cent of above,   ................. 246,094 50
Tax, one per cent,   ......................... 2,460 94
Sum abated,  ............................... 6,119 32

The Commonwealth appealed.

*A. Lincoln,* Assistant Attorney General, for the Commonwealth.

*H. M. Davis,* for the petitioners.

JENNEY, J.   These cases were considered in *Eaton, Crane & Pike Co.* v. *Commonwealth,* 237 Mass. 523, and the statutes under which the excises were laid were then construed.   The cases are now before us by appeals of the Commonwealth from final decrees entered after rescripts.   The facts need not be restated.   The questions involved relate wholly to the method followed in computing the excises.

The appellant contends that there was error because part of the income apportioned to Massachusetts was determined after deducting the income from interstate commerce instead of making an apportionment from the entire net income.   The decisive answer to the argument of the Commonwealth is that the statute imposed an excise "upon the privilege of conducting intrastate business within our borders in the case of foreign corporations" and expressly provided that only net income which is not derived from interstate or foreign commerce shall be apportioned.   St. 1918, c. 253, § 3; c. 255, § 3.   St. 1919, c. 342, §§ 1, 9.   *Eaton, Crane & Pike Co.* v. *Commonwealth, supra.*   See also *Underwood Typewriter Co.* v. *Chamberlain,* 254 U. S. 113.

It is urged that income from business outside the Commonwealth was wrongly included in the deduction asserted to have been made for interstate commerce.   The statute, however, provided for the ascertainment of the net income on which the excise was to be based by deducting from the total net income that derived from three sources.   *Eaton, Crane & Pike Co.* v. *Commonwealth, supra.*   It is clear that no other deductions were required and the excise is to be computed on the balance.

The first of these deductions relates to income from business carried on outside the Commonwealth, and that amount is determined by the rule established by St. 1918, c. 255, § 3, St. 1919, c. 342, § 9. Indisputedly according to this method the deduction was eighty-one per cent of the income from such business. The second and third deductions are not affected by the statute rule of determination under which the first was made. The record does not show that there was a deduction on account of income from business outside the Commonwealth figured by an apportionment of the entire net profits, or that income from that source has been twice deducted. The appellant admits, as stated in its brief, that if this course had been followed the Commonwealth would have been entitled to no tax from the petitioner; hence it has not been harmed in this respect. The petitioner did not appeal.

The Commonwealth also contends that the income from sales made in Massachusetts of merchandise located here to purchasers without its limits, followed by a delivery of such property in other States as a part of the contract of sale is not wholly income derived from interstate commerce. Because the goods were manufactured, sales made, title passed, accounts kept, payments received, deliveries made to carriers for transportation to customers without the State, all in this Commonwealth, it is urged first, that the income was not derived from interstate activities, but resulted wholly from processes antedating interstate commerce and wholly within the Commonwealth, and secondly, that even if the sales constituted interstate commerce, the process of manufacture did not.

It is evident that until their shipment the goods referred to, if in existence as such prior to the contract of sale, were not the subject of interstate commerce; but it does not follow that the income from the entire transactions did not result from such commerce. There was no actual profit from the property until its sale for shipment to other States; when shipped it certainly became the subject of interstate commerce.

The transactions are not governed by the principle applying where merchandise has been dealt with after it has wholly ceased to bear the stamp of such commerce; hence cases like *H. P. Hood & Sons* v. *Commonwealth*, 235 Mass. 572, *Brown* v. *Houston*, 114 U. S. 622, *American Steel & Wire Co.* v. *Speed*, 192 U. S. 500, *Bacon*

v. *Illinois,* 227 U. S. 504, do not govern.   See *General Oil Co.* v. *Crain,* 209 U. S. 211, 228.

Neither the fact that an article is manufactured for export to another State nor the intent of the manufacturer in that regard fixes the time when it belongs to commerce.   *Kidd* v. *Pearson,* 128 U. S. 1, 24.   It was settled in the leading case of *Coe* v. *Errol,* 116 U. S. 517, that goods do not become the subject of interstate commerce until (page 525) "they commence their final movement for transportation from the State of their origin to that of their destination," or (page 527) "until they have been shipped, or entered with a common carrier for transportation to another State, or have been started upon such transportation in a continuous route or journey," and that they are subject to local taxation until such time.   To the same effect see *Kidd* v. *Pearson, supra; United States* v. *E. C. Knight Co.* 156 U. S. 1, 13; *Cornell* v. *Coyne,* 192 U. S. 418; *General Oil Co.* v. *Crain, supra,* at page 228; *Bacon* v. *Illinois, supra; McCluskey* v. *Marysville & Northern Railway,* 243 U. S. 36; *Crescent Cotton Oil Co.* v. *Mississippi,* 257 U. S. 129.

The excise under consideration can be laid only on net income not derived from interstate or foreign commerce.   It is contended that, in determining the net income derived from the sale of goods in interstate commerce, the entire proceeds from such sales cannot be made the basis of computation of the exemption.   This contention if sustained would require the deduction of a part of income actually accruing because of processes happening before the movement of the goods, although the contracts of sale did not contemplate any such apportionment or furnish any measure for so doing. No such deduction in terms is made by the statute.

If it is assumed that the goods were manufactured for sale without reference to the possibility that they might be sold without the State and that none of the attributes of interstate commerce attached thereto until their actual sale, nevertheless, under these statutes the income derived from such sales is not to be considered in whole or in part as income not derived from interstate or foreign commerce, although largely affected by the conduct of the business as carried on within the Commonwealth.

If it is assumed that the net income here considered was measured wholly by cash receipts from sales from a common stock

of merchandise situated within the Commonwealth and that sales were effectuated by the utilization of interstate commerce, the entire income from such transactions was actually received from interstate commerce. If the intrastate activities in the production of the goods are considered and deductions made on their account, very little may remain. "The making of goods" is "not commerce, nor does the fact that these things are to be afterwards shipped or used in interstate commerce, make their production a part thereof. *Delaware, Lackawanna & Western Railroad* v. *Yurkonis,* 238 U. S. 439." *Hammer* v. *Dagenhart,* 247 U. S. 251, 272. The point for present decision is one of statutory construction. The statutes here in question provide no adequate machinery for the separation between the income justly attributable to intrastate manufacture and that attributable directly to interstate commerce. Since the income actually arises from interstate commerce, the law goes no further in differentiation for purposes of taxation. In substance the proposition is the converse of that considered in *H. P. Hood & Sons* v. *Commonwealth, supra,* where it was contended by the taxpayer that the income received was derived from interstate commerce although the goods were sold after they had become part of a common stock of merchandise.

The cases are not within the authority of *Keystone Watch Case Co.* v. *Commonwealth,* 212 Mass. 50, where the constitutionality of a statute (St. 1909, c. 490, Part III, § 56) establishing an excise tax based upon authorized capital stock as a condition of doing business within the Commonwealth other than interstate commerce was upheld. The activities of the corporation largely consisted in the ownership and operation of a large factory, and were held to be adequate basis for the excise tax.

The cases upholding a tax on net income incidentally derived from interstate commerce are not in conflict. These cases in effect decide that a tax may properly be levied upon property or business although indirectly affecting profits on interstate commerce. In *United States Glue Co.* v. *Oak Creek,* 247 U. S. 321, the statute considered specifically permitted deductions from the intrastate income of a corporation. It was contended that a tax on net income derived in interstate commerce was included, although not levied nor computed as such. The tax indirectly affected the returns from such commerce by diminishing the net profits

therefrom. The tax was sustained after full consideration because it did not interfere with nor impair interstate commerce directly or indirectly. *Shaffer* v. *Carter*, 252 U. S. 37. *Underwood Type-writer Co.* v. *Chamberlain, supra,* are governed by the same principle. See also *Hump Hairpin Manuf. Co.* v. *Emmerson,* 258 U. S. 290.

The objections made to the method of computation cannot be sustained and the decrees must be affirmed.

*So ordered.*