COLEMAN BROS., INCORPORATED *vs.* UNION STREET RAIL-
WAY COMPANY.

Bristol.   October 28, 1935. — December 4, 1935.

Present: RUGG, C.J., PIERCE, FIELD, LUMMUS, & QUA, JJ.

*Motor Vehicle,* Trailer.   *Words,* "Trailer," "In connection with com-
merce," "Carrying . . . commodities."

A portable air compressor weighing in all two tons, consisting of a gaso-
line engine, tank and compressor mounted on a four wheel platform
without motive power of its own and equipped with a pole or tongue
by which it could be attached to another vehicle, and used by a con-
tractor who owned it as an implement in the repairing of a highway,
was not, while being towed on the highway during such use, a "trailer"
within G. L. (Ter. Ed.) c. 90, § 1.

TORT.   Writ in the Third District Court of Bristol dated
December 16, 1931.

The action was heard in the District Court by *Milliken,*
J., who found for the plaintiff in the sum of $901 and in-
terest.   A report to the Appellate Division for the Southern
District was ordered dismissed.   The defendant appealed.

The case was submitted on briefs.

*T. F. O'Brien,* for the defendant.

*J. E. Chisholm,* for the plaintiff.

FIELD, J.   This is an action of tort brought in the Dis-
trict Court to recover compensation for damage to the
plaintiff's air compressor resulting from its being struck
when on the highway by an electric car of the defendant
which was being operated negligently.   Rulings of law were
requested by both parties.   Some requests were refused,
others were granted.   The trial judge made specific find-
ings of fact and found for the plaintiff.   A report to the
Appellate Division of the rulings of the trial judge, setting
forth all the evidence material to the questions reported,
was dismissed and the defendant appealed to this court.

No question is raised as to the occurrence of the accident

on the highway, the negligence of the defendant or the resulting damage to the plaintiff's air compressor.

The defendant, however, contends that the plaintiff's air compressor was a "trailer" within the meaning of G. L. (Ter. Ed.) c. 90, § 1, and that since, as was conceded at the trial, "this vehicle was not registered and had no number plates attached" it was wrongfully on the highway and, consequently, the plaintiff was barred from recovery for damage to it resulting from the defendant's negligence, according to the established principles applicable to unregistered motor vehicles. See *Dudley* v. *Northampton Street Railway*, 202 Mass. 443; *Potter* v. *Gilmore*, 282 Mass. 49, and cases cited. The rulings of the trial judge were adverse to this contention on the ground that the air compressor was not a "trailer" within the meaning of the statute. There was no error in the rulings.

Subsidiary facts found by the trial judge, on evidence warranting the findings, are as follows: The plaintiff "is engaged in the general contracting business and had a contract with the Commonwealth, through its Department of Public Works, to make repairs on the New Bedford-Fairhaven Bridge, a state highway (St. 1930, c. 406) nearly a mile long and fifty feet wide and in making such repairs it used an air compressor." The accident occurred on the afternoon of July 3, 1931, while "the compressor was being hauled or towed by an automobile truck from where it had been in use, westerly over the roadway of the bridge to be placed in some convenient place over the Fourth." "The air compressor in question was a Chicago Pneumatic Portable Air Compressor weighing about two tons, mounted on a four wheel steel platform with a pole or tongue in front, which could be attached or fastened to some other vehicle and hauled or towed by an automobile truck in front and moved from place to place. A cut or picture of the compressor was admitted as a chalk to give an idea of what it looked like. [This cut or picture, a copy of which is included in the report, is entitled Figure 4. — Chicago Pneumatic Class P6–DGL Portable Air Compressor Mounted on CP Trailer.] This cut showed a gaso-

line engine, tank and compressor placed on a platform with a top, as above described mounted on a CP trailer . . . . It had no motive power and could not be moved from place to place of itself."

The judge made a finding, involving a ruling of law, that while "this air compressor was a trailer in the common definition of that word . . . it was an implement or tool used in making the repairs and not such a trailer as comes within the statutory definition requiring registration."

G. L. c. 90, § 9, as amended (see St. 1931, c. 95), provides, subject to certain exceptions, that "No person shall operate any motor vehicle or draw any trailer, and the owner or custodian of such a vehicle shall not permit the same to be operated upon or to remain upon any way . . . unless such vehicle is registered in accordance with this chapter . . . ." G. L. (Ter. Ed.) c. 90, § 1, provides in part that "The following words used in this chapter shall have the following meanings, unless a different meaning is clearly apparent from the language or context, or unless such construction is inconsistent with the manifest intention of the legislature: . . . 'Trailer', a vehicle used for carrying passengers for hire or commodities in connection with commerce and having no motive power of its own, but which is drawn by a motor vehicle.  It shall not include a pair of wheels commonly used as an implement for other purposes than transportation."   See St. 1933, c. 332.

The conclusion of the trial judge that the air compressor was "not such a trailer as comes within the statutory definition," on the proper interpretation of that definition, is supported by the subsidiary findings.

The statutory requirements of registration of motor vehicles have been enlarged from time to time.  These requirements, however, were not extended to trailers until, by St. 1919, c. 294, certain "commercial trailers" were required to be registered and the operation thereof on the ways of the Commonwealth without registration was prohibited.  By St. 1920, c. 476, a "commercial trailer" was defined in terms not materially different from those of the definition of "trailer" above quoted.  The definition of

"trailer," however, was enlarged by St. 1933, c. 332, so as to include "a vehicle used for carrying passengers or personal property and having no motive power of its own, but which is drawn by, or used in combination with, a motor vehicle," but this definition was not in force when the accident occurred. See §§ 2, 5. Very likely the common understanding of the word "trailer" may be broader than the statutory definition here in question. Obviously the word "trailer" in the description of the air compressor, or a part of it, in the subsidiary findings and in the title of the picture was used in a popular sense and not with reference to the statutory definition. Such use has no tendency to show that the air compressor, or a part of it, was within that definition. Moreover, it might well be thought — as apparently the Legislature thought in passing St. 1933, c. 332 — that the reason for requiring registration of trailers, as defined in G. L. (Ter. Ed.) c. 90, § 1, applied also, in some degree at least, to vehicles not used for the purposes described therein. But neither on these grounds, nor on the ground that "a different meaning" of the word "trailer" from that given to it by the statutory definition is "clearly apparent from the language or context" or that the meaning given by such definition is "inconsistent with the manifest intention of the legislature," can the meaning of the statutory definition be extended beyond that naturally attributable to the words used therein.

Clearly, neither the air compressor considered as a whole nor any part of it was "a vehicle used for carrying passengers for hire." Was it, or any part of it, "a vehicle used for carrying . . . commodities in connection with commerce"? The finding that the air compressor "was an implement or tool used in making the repairs" was warranted. This finding, however, did not necessarily preclude a finding that it, or at least a part of it, was "a vehicle used for carrying . . . commodities." The defendant contends that the air compressor considered as a whole consisted of two parts, a vehicle — the platform on wheels — and commodities — the gas engine, gas tank and air compressor proper. But we need not consider whether the subsidiary findings require

the conclusion contended for since it could have been found that no commodities were carried "in connection with commerce."

The principles governing the interpretation of statutes require that the words "in connection with commerce" be given some meaning. *Libby* v. *New York, New Haven & Hartford Railroad*, 273 Mass. 522, 526. By these words the Legislature obviously intended to limit the meaning of the preceding words, "carrying . . . commodities." Though the mere transportation of commodities in some circumstances may be commerce (see *United States* v. *Hill*, 248 U. S. 420), here the words mean more than mere transportation. Mere transportation is covered by the word "carrying," and the use of the further words, "in connection with commerce," as meaning mere transportation would be nugatory. They imply that there must be some commercial element beyond mere transportation. A comprehensive statement of additional commercial elements sufficient to meet this requirement is not essential. Nor need it be decided how far the elements hereinafter referred to as nonexistent in this case would be sufficient. It is enough to say that the subsidiary facts found support the conclusion — implicit in the finding of the trial judge that the plaintiff's vehicle was not a "trailer" within the statutory definition — that there was no commercial element in the use of the vehicle in addition to mere transportation sufficient to characterize such use as a use "in connection with commerce." No commodities were carried for the purpose of purchase, sale or exchange thereof or in pursuance of any contract for such purchase, sale or exchange. No commodities were carried by the plaintiff "for others, as an independent business." See *Hanley* v. *Kansas City Southern Railway*, 187 U. S. 617, 619. The gas tank and air compressor proper were being carried by the plaintiff in connection with, and solely as an incident of, its work in repairing the highway under contract. And the inference was warranted that these articles were not being carried by the plaintiff for hire except as such carrying was paid for as a part of payment for the work of repairing the highway.

Repairing the highway was not commerce. See *Eaton, Crane & Pike Co.* v. *Commonwealth,* 241 Mass. 309, 314; *Hammer* v. *Dagenhart,* 247 U. S. 251, 272. And the carrying of tools or implements by their owner, not in connection with the purchase, sale or exchange thereof, but in connection with, and solely as an incident of, the work of such owner in repairing the highway, was not, as matter of law, carrying such tools or implements "in connection with commerce" within the meaning of those words as used in G. L. (Ter. Ed.) c. 90, § 1.

The construction here given to G. L. (Ter. Ed.) c. 90, § 1, is not precluded by the express exception therein contained or by the exception from the application of G. L. c. 90, § 9, as amended, of trailers used for agricultural or industrial purposes. These exceptions apply to vehicles and uses thereof which, but for these exceptions, might fall within the definition in G. L. (Ter. Ed.) c. 90, § 1, and the prohibition of the operation of unregistered vehicles in G. L. c. 90, § 9, as amended. These statutory exceptions, therefore, are not rendered nugatory by the construction here given to G. L. (Ter. Ed.) c. 90, § 1.

*Order dismissing report affirmed.*