**WILLARD STORAGE BATTERY CO.
v EVATT**

Board of Tax Appeals

Department of Taxation of Ohio

No. 838. Decided Jan. 26, 1942.

Charles Follett, Cleveland; McKeehan, Merrick, Arter & Stewart, Cleveland, for appellant.

Thomas J. Herbert, Atty. General, Columbus, and Perry L. Graham, Asst. Atty General, Columbus, for appellee.

## OPINION

This cause and matter is before the Board of Tax Appeals on the appeal of Willard Storage Battery Company, the appellant above named, from a corrected franchise tax assessment for the year 1939 made against it as a foreign corporation by the Tax Commissioner under date of November 9 in said year.

On July 7, 1939, the appellant, a corporation organized under the laws of the State of West Virginia and engaged in the business of manufacturing and selling electric storage batteries in the State of Ohio and elsewhere, filed its annual corporation franchise tax report for said year, as required by the provisions of §5495-2 GC; which report as to the information therein contained was in manner and form as required by §5497 GC. In this report the appellant separately stated the value of its property, real and personal, which was owned and used by it in Ohio, and that owned and used by it ouside of Ohio; and likewise set out therein its liabilities (less capital and surplus) as of January 1 of said year. On the information thus set out in the appellant's report the Tax Commissioner determined the base value of the issued and outstanding shares of stock of said corporation as provided in §5498 GC, and fixed such value at the sum of $8,685,091.00. Then applying the property fraction indicated by the fair value of appellant's property in Ohio as against the fair value of that owned and used by it in Ohio and elsewhere (as to the correctness of which property fraction no question is made in this case), and, likewise, the business fraction indicated by the value of the business done by the corporation in this state (as determined by the Tax Commissioner) as against the total value of the business of the corporation wherever transacted as set out in appellant's report, the Tax Commissioner determined the taxable valuation of the issued and outstanding shares of stock of the corporation represented by the property owned and business done by it in this State, and found

such taxable value to be $5,953,899.00. The Tax Commissioner in determining said business fraction apparently included in the numerator thereof the value of the sales made by appellant during the year 1938 of all goods manufactured at the plant of the corporation in Ohio, and included in the denominator of the fraction the value of the sales made by appellant during said year of goods manufactured by it in Ohio and elsewhere.

After the Tax Commissioner by the application of the property and business fractions above noted had determined the taxable value of the issued and outstanding shares of the stock of the corporation represented by property owned and business done by the corporation in this State, and after the franchise tax of one tenth of one per cent had been extended against such valuation, as provided in §5499 GC, the appellant acting under the authority of §5500 GC, filed an application for a review of the determination theretofore made by the Tax Commissioner of the value of the issued and outstanding shares of stock of the corporation represented by the property owned and business done by the corporation in this State.

In this application for review of the determination of the Tax Commissioner therein complained of the appellant did not question the base valuation of the issued and outstanding shares of the stock of the corporation as determined by the Tax Commissioner, or the correctness of the property fraction used by said officer in determining the taxable value of the issued and outstanding shares of stock represented by the property owned and business done by the corporation in this State. The Appellant, however, complained of the business fraction used by the Tax Commissioner in this computation; and as to this the appellant contended that the business fraction to be used in making such computation should be ascertained by taking the average of two fractions:

1. The value of the sales of goods manufactured by the appellant at its

manufacturing plant in Ohio, wherever sold ($8,232,867.52) as against the value of sales made of all its goods manufactured in Ohio and elsewhere ($9,174,659.10), and

2. Total sales from its Ohio plant (or warehouses) to Ohio customers ($1,460,345.67) as against total sales of all its products everywhere ($9,174,-659.10).

Averaging the business fraction thus obtained with the property fraction and applying the result to the base valuation of the issued and outstanding shares of stock of the corporation ($8,685,091.00) gave a value on that part of the issued and outstanding shares of stock of the corporation represented by property owned and business done in this State of $4,351,100.00. The franchise tax extended against this valuation at the rate provided for in §5499 GC, was $4,351.10. The franchise tax of the appellant for the year 1939 was thereupon computed by the Tax Commissioner on this basis and the amount of tax thus determined was paid by the appellant. By agreement by and between the appellant and the Tax Commissioner the determination of the corporation's franchise tax on this basis for the year 1939 and its payment by said company was without prejudice to the right of the Tax Commissioner to make a further computation of the franchise tax of the corporation for said year and without prejudice to the right of the taxpayer to appeal to the Board of Tax Appeals from any increased assessment which might result from such further computation by the Tax Commissioner.

Thereafter, on October 13, 1939, the Tax Commissioner on a consideration of the rule to be applied in determining the business fraction to be used by him in the computation of the taxable valuation of the issued and outstanding shares of stock of corporations represented by the property owned and business done by such corporations in this state, adopted and certified to the Secretary of State in the manner provided by law, Rule No. 275. which rule is as follows:

"Business done in and out of Ohio by a corporation subject to the payment of franchise taxes shall be determined under §5498 GC, by allocating to the business fraction therein provided sales in and out of Ohio.

All sales of goods from warehouses in Ohio, wherever manufactured, shall be considered as Ohio sales.

In the case of manufacturing companies, all sales of goods manufactured in Ohio, wherever sold, shall be considered as Ohio sales, except sales of such products as are sold from warehouses outside of this state.

The denominator of such business fraction shall in all cases be the total sales wherever made."

Applying this rule to the facts and figures reported by the taxpayer the Tax Commissioner determined the business fraction used by him by including in the numerator the value of the sales made during the year 1938 of products which, as found by the Tax Commissioner, were manufactured at the plant of the corporation in this State, and by including in the denominator of the fraction the value of the sales made by the corporation during said year of products manufactured in Ohio and elsewhere. The business fraction thus obtained was the same as that used in the original computation of the franchise tax to be paid by said corporation, and the application of this fraction together with the property fraction above noted resulted in an increased tax assessment in the amount of $1,602.80. The corporation, acting under the authority conferred upon it by §5611 GC, filed this appeal from said increased franchise tax assessment for the year 1939 and from the determination made by the Tax Commissioner of the value of the issued and outstanding shares of stock of the corporation represented by property owned and business done by it in this State, which determination resulted in the increased tax assessment complained of. The case presented by this appeal was submitted to the Board of Tax Appeals upon a transcript of the proceeding

of the Tax Commissioner and upon an agreed statement of the facts in the case.

Although the appellant in the appeal filed by it with the Board of Tax Appeals referred to Rule ██ 275 adopted by the Tax Commissioner as above noted, this proceeding is not one under the provisions of §1464-4 GC, invoking the jurisdiction and authority of the Board of Tax Appeals to determine whether this rule is reasonable or unreasonable; but the question presented to the Board on this appeal is whether said increased franchise tax assessment made against appellant is erroneous, which question, obviously, involves the primary question as to the correctness of the business fraction used by the Tax Commissioner in making the computation which led to such increased assessment. The determination of the question or questions thus presented requires a consideration not only of the provisions of the Rule of the Tax Commissioner above referred to but also of the pertinent statutory provisions relating to and providing for the assessment of corporations in this State. As to this it is noted that as to foreign corporations the tax is "the fee charged against each corporation organized for profit under the laws of any state or country other than Ohio, except as provided herein, for the privilege of doing business in this state or owning or using a part or all of its capital or property in this state or for holding a certificate of compliance with the laws of this state authorizing it to do business in this state, during the calendar year in which such fee is payable". §5495 GC.

Sec. 5495-2 GC, provides that annually, between the first day of January and the thirty-first day of March, each corporation incorporated under the laws of this State for profit, and each foreign corporation for profit, doing business in this State or owning or using a part or all of its capital or property in this State, shall make a report in writing to the Tax Commissioner in such form as may be prescribed; and

§5497 GC, sets out the nature of the information required to be given in such report and, among other things, provides that such report shall include a statement as to "the total amount of business done and the amount of business done within the State by said corporation during its preceding annual accounting period, given separately". After the filing of such annual corporation report the Tax Commissioner, under the provisions of §5498 GC, is required to determine the value of the issued and outstanding shares of stock of the corporation filing such report. This section further provides that the Tax Commissioner shall then determine the base upon which the tax provided for in §5499 GC, shall be computed, as follows:

"Divide into two equal parts the value as above determined of the issued and outstanding shares of stock of each corporation filing such report. Take one part and multiply by a fraction whose numerator is the fair value of all the corporation's property owned or used by it in Ohio and whose denominator is the fair value of all its property wheresoever situated, in each case eliminating any item of good will; take the other part and multiply by a fraction whose numerator is the value of the business done by the corporation in this state during the year preceding the date of the commencement of its current annual accounting period and whose denominator is the total value of its business during said year whereever transacted."

This section further provides that thereupon the Tax Commissioner shall certify to the Auditor of State the amount determined by him "through adding the two figures thus obtained for each corporation". By §5499 GC, it is provided that "the auditor of state shall charge for collection from each such corporation a fee (tax) of one-tenth of one per cent upon such value so certified and shall immediately certify the same to the treasurer of state".

As above noted the primary question for consideration in this case is wheth-

er the Tax Commissioner in making the computation determining the amount of the franchise tax to be paid by the appellant in the year 1939 used the proper business fraction to determine the value of the business done by the appellant in this State during the year 1938 as compared with the total value of its business during said year wherever transacted, or whether the Tax Commissioner in determining such business fraction included in the numerator thereof items which under said Rule aforesaid and the law applicable thereto, should have been excluded from the numerator of such business fraction. In this connection it does not appear that the appellant in this case denies, generally, the right of the Tax Commissioner to take the value of the sales made by the corporation from its manufacturing plant in Ohio during the year 1938 as a measure of the value of the business done by said corporation; but aside from its contention that the Tax Commissioner in determining the business fraction to be used by him in his computation should have averaged the separate fractions indicating, respectively, the industrial and commercial activities of the company during said year, as set out in its application for review filed with the Tax Commissioner in this case, the appellant likewise contends that the Tax Commissioner included in the numerator of the business fraction used by him items of sales made by the corporation which should not have been included therein.

As to the contention made by the appellant that the Tax Commissioner in determining the proportion of business done by the corporation in this State should have separately considered the factors of manufacturing operations and sales of its finished products, respectively, and should have averaged the fractions represented by the several factors, it is to be observed that although the sections of the General Code providing for the franchise tax to be paid by corporations for the privilege of doing business in this State provides that

such tax shall be determined in part by a consideration of the value of the business done by the corporation in this State as compared with the total value of its business wherever transacted, these statutory provisions like the laws of the State of Illinois and, perhaps, of other states as well providing for corporation franchise taxes, do not direct the use of any particular factor or factors in determining the proportion of the business done by the corporation in the State. In this situation it is competent for the taxing authority charged with the administration of the franchise tax law in determining the amount of franchise tax to be paid by a manufacturing corporation having a manufacturing plant in Ohio to determine the proportionate amount of business done by the corporation in this State by a consideration of the value of the sales of its manufactured products made from such manufacturing plant or from warehouses or other stocks of goods of the corporation located in the State. See Illinois Iron & Bolt Company v Emmerson, Secretary of State, 333 Illinois 351; Hump Hairpin Manufacturing Company v Emmerson, Secretary of State, 258 U. S. 295; Western Cartridge Company v Emmerson, Secretary of State, 281 U. S. 511. In this connection it is pertinent to note that ever since the original enactment of the Corporation Franchise Law of this State providing for the determination of the amount of such tax on the basis of the proportion of the property owned and business done by the corporation in this State. the Tax Commission of Ohio in administering this law as to a manufacturing corporation, has measured the proportionate amount of its business in Ohio by the value of the sales of its manufactured products from its factory or warehouse or from other stocks of its manufactured goods in this State. Rule No. 275, above referred to, adopted by the Tax Commissioner under date of October 13, 1939, is but a confirmation

of the uniform rule of practice governing the determination of the franchise taxes to be paid by manufacturing corporations doing business in this State. As to this it is further noted that the Attorney General in an Opinion directed to the Tax Commission of Ohio under date of April 15, 1915, construing §5502 GC, (as to foreign corporations the section preceding §5498 GC) said: "I am of the opinion that under the provisions of §5502 GC, it is the duty of the commission to select some factor or criterion which will represent the volume of the business done in Ohio as compared with the volume of the business of the company as a whole; and that the business being manufacturing, and all manufacturing being for the purpose of sale, the sales of the products of the factories may be used as such a measure of the volume of the manufacturing business. When so used the sales do not represent commerce at all, but manufacture, and may just as appropriately be used for this purpose as any other criterion, such as the total value of the manufactured articles." O. A. G. 1915 Vol. 1, p. 460. See O. A. G. 1915 Vol. 3, p. 2411; O. A. G. 1932 Vol. 2, p. 615; O. A. G. 1933 Vol. 2, p. 1101; O. A. G. 1937 Vol. 1, p. 220.

The sections of the General Code of Ohio providing for corporation franchise taxes and for the determination of the amount of such taxes, have been amended from time to time since the original enactment; and the fact that the legislature with full knowledge of this uniform rule and practice by which the proportionate value of the business done by manufacturing corporations in this State has been determined on a consideration of the value of sales made by such corporations from manufacturing plants and warehouses in this State, has not by any legislative enactment prescribed any other or different factor to be used by the taxing authority in determining the proportionate value of the business done by such corporations in the State as compared with the value of the total business done by the corporations, is persuasive evidence of legislative recognition and approval of the method used by the taxing authority in administering the franchise tax laws above noted. Brewster v Gage, 280 U. S. 327; State ex rel v Brown, 121 Oh St 73, 76. As to this contention of the appellant it may be observed, generally, that where a franchise or other excise tax is measured or limited by the value of the sales of finished products sold or installed by the taxpayer in the taxing state, the amount and value of such sales may not be reduced or otherwise affected by allocating any part of the sale price of such goods to the cost of their maufacture in whole or in part out of such State. Eaton, Crane & Pike Company v Commonwealth, 241 Mass. 309; Dravo Contracting Company v James, 114 Fed. (2d) 242, 246. See Ford Motor Company v Clark, 100 Fed. (2d) 515, affirmed Ford Motor Company v Beauchamp, 308 U. S. 331. We are of the opinion, therefore, that the Tax Commissioner did not err in denying appellant's application for review, so far as this quetion is concerned.

There remains for consideration the question whether in determining the value of the business done by the appellant in this State the Tax Commissioner included in the numerator of the business fraction used by him in computing the value of the issued and outstanding shares of stock of the corporation represented by business done by it in Ohio, any item or items of sales which he was not legally authorized to include for this purpose. As to this it is noted that by some inadvertence due, perhaps to an error in the report filed by the appellant with respect to the total value of the sales of products made by the appellant from its plant at Cleveland, the Tax Commissioner erroneously included as part of appellant's Ohio business the value of the sale of goods manufactured by a subsidiary corporation, the Willard Storage Battery Company of California

and sold by said subsidiary corporation, presumably from its manufacturing plant in California, to consumers in California and adjoining states. These sales of the value of $127,458.07 should not have been included as a part of appellant's business.

With respect to sales made by the appellant of goods manufactured by the corporation at its manufacturing plant at Cleveland, Ohio, amounting in the aggregate to the sum of $8,105,409.45 it appears that such sales in the aggregate included the following items:

"1. Sales made by appellant to manufacturers in the City of Detroit which sales were made out of warehouses of appellant in Detroit on bids accepted by the company in said city. These sales amounted to the sum of $1,427,579.32;

2. Sales made by appellant from its manufacturing plant at Cleveland, Ohio, to customers in Ohio to the amount in value of $1,460,345.67;

3. Sales made by appellant from its manufacturing plant at Cleveland, Ohio, to distributors in states other than Ohio on orders obtained by agents of the company in such other states, which sales were of the amount in value of $3,350,301.18;

4. Sales made by the company from its plant in Ohio to customers outside Ohio other than the distributors above mentioned, which sales are of the amount in value of $1,867,183.17."

As to the sales made by the appellant from its warehouse in the city of Detroit to customers in said city, it is observed that these sales were included by the Tax Commissioner as Ohio business contrary to the provisions of Rule 275, above referred to. Without here expressing any view ▓▓▓▓▓▓▓▓ ▓ as to whether aside from the provisions of this Rule these sales could be legally included as part of appellant's Ohio business (see American Manufacturing Company v City of St. Louis, 250 U. S. 459), we are of the view that effect should be given to this Rule as against the action of the Tax Commissioner in including this item of sales in violation of the specific provision of said Rule that sales so made should be allocated out of the State. We are of the opinion, therefore, that the Tax Commissioner erred in including these sales amounting to the sum of $1,427,579.43 as a part of the business done by the corporation in this state.

Aside from the contention made by the appellant as to the separate allocation of sales with respect to the manufacturing and sales activities, respectively, of the appellant hereinabove considered and discussed, the appellant apparently does not question the right of the Tax Commissioner to include in his computation as Ohio business the sales made by appellant from its plant at Cleveland to customers in this State, which sales, as above noted, ▓▓▓▓▓▓▓▓▓▓ ed, are of the amount in value of $1,460,345.67. We are of the opinion that the Tax Commissioner of Ohio did not err in including these sales as Ohio business.

The appellant, relying upon the recent case of Wright Aeronautical Corp. v Martin, State Tax Commissioner, 19 Atl. (2nd) 338, decided by the Board of Tax Appeals of New Jersey, apparently contends that the Tax Commissioner erred in including as Ohio business and in the numerator of the business fraction by which the proportionate amount of such Ohio business was determined, sales made by the appellant from its main plant at Cleveland, Ohio, where it had its principal office, to distributors and other customers in states other than Ohio; and this on the stated ground that such sales were made in interstate commerce. In the consideration of this question it is to be observed that the tax here in question is not a tax on the sales made by appellant of the goods manufactured by it in Ohio or on the gross receipts or income of the appellant derived from such sales; but this tax as to appellant, a foreign corporation, is a franchise tax on the privilege the ▓▓▓▓▓▓▓▓▓ corporation has of doing business in this State and

of owning and using a part of its capital and property in this State, which tax is measured in part by the proportion of the business done by the corporation in this State of the total business. The distinction implicit in this statement with respect to this question, has been recognized in a number of cases decided by the Supreme Court of the United States. Thus in the case of Cloverdale v Arkansas-Louisiana Pipeline Company, 303 U. S. 604, 610, 82 L. Ed. 1048, it was said: "While a privilege tax by a state for engaging in interstate business has frequently met the condemnation of this Court as a regulation of commerce, privilege taxes for 'carrying on a local business', even though measured by interstate business, have been sustained. American Mfg. Co. v St. Louis, 250 U. S. 459, 69 L. Ed. 1084, 39 S. Ct. 522; Ficklen v Taxing Dist., 145 U. S. 1, 36 L. Ed. 601, 12 S. Ct. 810, 4 Inters. Com. Rep. 79, of Western Livestock v Bureau of Revenue, 303 U. S. 250, 82 L. Ed. 823, 58 S. Ct. 546." In the recent case of MacGoldrick v Berwind-White Coal Mining Company, 309 U. S. 33, 84 L. Ed. 565, the Supreme Court of the United States referring to previous decisions made by that Court distinguishing taxes on gross receipts derived from sales in interstate commerce from a tax conditioned upon the exercise of the taxpayer's franchise or privilege of manufacturing in the taxing district, said that a tax in the latter case "would have been sustained, despite its incidental effect on interstate commerce since the taxpayer's local activities or privilege are sufficient to support such tax, and that it could fairly be measured by the sales price of the goods." In the case of International Shoe Company v Shartel, 279 U. S. 429, 433, 73 L. Ed. 786, it was held:

"A franchise tax imposed on a corporation foreign or domestic, for the privilege of doing local business, if apportioned to business done or property owned within the State is not invalid under the commerce clause merely because a part of the property or capital included in computing the tax is used by it in interstate commerce."

In the case of J. D. Adams Manufacturing Company v Storen, 304 U. S. 311, 312, 82 L. Ed. 1365, 1369 the Supreme Court, distinguishing the tax there under consideration (a state gross income tax) from that of the kind involved in this appeal, said:

"It is not a charter fee or a franchise fee measured by the value of goods manufactured or the amount of sales such as the State would be competent to demand from domestic or foreign corporations for the privilege conferred. It is not an excise upon the privilege of producing or manufacturing within the State, measured by the volume of production or the amount of sales."

The Court likewise in this case, distinguishing the tax then before it from that involved in the case of American Manufacturing Company v St. Louis, 250 U. S. 459, 63 L. Ed. 1084, 39 S. Ct. 522, and speaking of the earlier case referred to, said:

"That case dealt with a municipal license fee for pursuing the occupation of a manufacturer in St. Louis. The exaction was not an excise tax laid upon the taxpayer's sales or upon the income derived from sales. The tax on the privilege for the ensuing year was measured by a percentage of the past year's sales. The taxpayer had during the preceding year removed some of the goods manufactured to a warehouse in another state, and upon sale, delivered them from the warehouse. It contended that the City was without power to include these sales in the measure of the tax for the coming year. The Court held, however, that the tax was upon the privilege of manufacturing within the State and it was permissible to measure the tax by the sales price of the goods produced rather than by their value at the date of manufacture."

The decision of the Court in the case of American Manufacturing Company v St. Louis goes beyond the question here under consideration as the same is presented on this appeal; and, as above noted, giving effect to Rule 275 adopted by the Tax Commissioner, it is our view that the sales made by the appellant to customers in another state from a warehouse in that State, should not be included by the Tax Commissioner as a part of appellant's Ohio business. However, as recognized by the Supreme Court of the United States in later cases the case of the American Manufacturing Company v St. Louis distinctly supports the view that as to a manufacturing corporation having its manufacturing plant and principal office in the taxing state, sales made by the corporation from its plant to customers in other states may be considered, together with the intrastate sales made by it, in measuring the amount of a franchise or privilege tax to be paid by such corporation. In the case of Hump Hairpin Manufacturing Company v Emmerson, 258 U. S. 295, 66 L. Ed. 623, 625, the Court in sustaining a tax assessed against said company under the corporation franchise tax law of the State of Illinois said:

"While a state may not use its taxing power to regulate or burden interstate commerce (United States Exp. Co. v Minnesota, 223 U. S. 335, 56 L. Ed. 459, 32 Sup. Ct. Rep. 211; International Paper Co. v Massachusetts, 246 U. S. 135, 62 L. Ed. 624, 38 Sup. Ct. Rep. 292, Ann. Cas. 1918C, 617), on the other hand it is settled that a state excise tax which affects such commerce, not directly, but only incidentally and remotely, may be entirely valid where it is clear that it is not imposed with the covert purpose or with the effect of defeating Federal constitutional rights. As coming within this latter description, taxes have been so repeatedly sustained where the proceeds of interstate commerce have been used as one of the elemnts in the process of determining the amount of a fund (not wholly derived from such commerce) to be assessed, that the principle of the cases so holding must be regarded as a settled exception to the general rule. * * * The turning point of these decisions is whether, in its incidence, the tax affects interstate commerce so directly and immediately as to amount to a genuine and substantial regulation of, or restraint upon, it, or whether it affects it only incidentally or remotely, so that the tax is not in reality a burden, although in form it may touch, and, in fact, distantly affect, it."

The decision of the Court in the case of Hump Hairpin Manufacturing Company v Emmerson was followed in the later decisions of Illinois Iron & Bolt Company v Emmerson, 333 Ill. 351, 164 N. E. 667 and Western Cartridge Company v Emmerson, 281 U. S. 511, 74 L. Ed. 1004, both of which cases, likewise, arose under the corporation franchise tax law of the State of Illinois. In the case of Illinois Iron & Bolt Company v Emmerson, supra, the Supreme Court of Illinois held as indicated in the head note of the last named report of this case as follows:

"Where secretary of state, in computing franchise tax to be paid by corporations under Corporation Act (Smith-Hurd Rev. St. 1927, c.32) par. 105, on each $100 of proportion of capital stock represented by business transacted and property located in state, included interstate business transacted by corporations as well as intrastate business, tax was not invalid, since tax imposed on interstate commerce was incidental."

In the case of Western Cartridge Company v Emmerson, supra, it was held as to the petitioner, a foreign corporation, engaged in the manufacture of products in the State of Illinois, that although the acceptance by the corporation of orders for its products to be shipped to other States and foreign countries, and what was thereafter done by it in filling such orders, became component parts of interstate or for-

eign commerce, such interstate commerce was not unlawfully burdened by the inclusion of sales of such products manufactured in the State and shipped to customers in other States, in computing a State franchise tax measured at a prescribed rate on the proportion of the issued capital stock of the company represented by the proportion of its business transacted and property located in the state. The Court in its opinion in this case said:

"The tax in question was not laid directly upon interstate commerce, or any of its elements. For the determination of the amount the taxpayer's business and property located in Illinois is divided by the total of all its business and property and that percentage is applied to the issued shares and the resulting number taken for taxation at the rate of 5 cents per $100. As the amount depends on the relation each to the others of the various elements employed in the calculation, the fee or tax does not directly depend upon the amount of the taxpayer's interstate transactions. The exaction may arise while the sales to customers outside Illinois decline and may fall while such sales increase.

The amount imposed upon petitioner did not even indirectly burden the interstate transportation resulting from the shipping directions given by petitioner in fulfillment of its contracts of sale. There is nothing to indicate that by the enactment in question the state intended to regulate or burden such commerce or to discriminate as between sales to Illinois customers and those made to buyers in other states and countries. The tax cannot be said directly or by necessary operation to affect any of the things done by petitioner which, by reason of transportation of goods to places outside Illinois in accordance with the directions of the purchasers, became elements or component parts of interstate or foreign commerce. Petitioner's sales prices are based on deliveries to common carriers at its factories. The expense of transportation is not involved in the calculation. And it is plain that, if the fee or tax in question affected petitioner's interstate or foreign commerce at all, the burden was indirect and remote and not a violation of the commerce clause."

In the case of Wright Aeronautical Company v Martin, supra, relied upon by appellant with respect to this question, the Board of Tax Appeals of New Jersey held that under R. S. Secs. 54:32 A-1, et seq., of the laws of that state providing for the assessment of a privilege tax against foreign corporations doing business in that state, based upon the proportion of capital stock issued, which "gross income from business done in this State bears to total gross income from entire business", require a determination by the State Tax Commissioner of the proportion of intrastate sales to total sales of the company, and that the inclusion by the Tax Commissioner within "gross income from business done in this state", of such portion of the receipts from out-of-state sales of products manufactured by the company in New Jersey as he deemed was allocable to the cost of manufacturing such products at its plant in New Jersey, was not authorized by the provisions of said act. Although we are in accord with the view of the New Jersey Board of Tax Appeals that under the facts in the case there could be no allocation of sales receipts of the corporation as between its manufacturing and other activities, we are unable to determine from the opinion of the Board of Tax Appeals in the case above cited whether the facts before the Board in that case fairly presented the question now before this Board on the appeal filed by appellant in this case. Although it appears from the opinion in the cited case that the petitioner in that case had its manufacturing plant in New Jersey and sold its products there manufactured "to customers within as well as out of the state", it does not affirmatively appear whether sales to customers out of the State were made directly from the manufacturing plant

of said company in New Jersey or whether, on the other hand, the manufactured products of the company were shipped by it to warehouses, storerooms, or other repositories in other States and were there sold to customers. In this connection the fact that the Board of Tax Appeals of New Jersey cites the case of Ford Motor Company v Clark, 100 Fed. (2d) 515, 308 U. S. 331, as a case converse on the facts to the case there under consideration, is some indication that in the case before said Board it appeared that the sales there in question were not made directly from the plant of the company in New Jersey to customers in other states, but that such sales were made from repositories of the company in other States and to customers of these respective States. In any view as to this question, we are inclined to the opinion that the decision in the case of Wright Aeronautical Company v Martin, supra, as an authority should be limited to the particular case before the Board of Tax Appeals making said decision. And we can not ascribe any weight to said decision on the question now before this Board; which question, as above noted, involves a consideration of sales made by the appellant directly from its manufacturing plant in Ohio to customers in other States. With respect to this question we see no fundamental difference between the corporation franchise tax law of this State, in its application to foreign corporations, from the corporation franchise tax law of the State of Illinois, which was construed and applied in cases above noted. And in this view we are of the opinion that the Tax Commissioner of this State did not err in including as Ohio business sales of goods made by the appellant from its plant in Cleveland to distributors and other customers in States outside Ohio, which sales, as above noted, are of the amount and value of $3,350,301.18 and $1,867,183.17, respectively.

We are of the opinion, therefore, that the order of the Tax Commissioner determining the taxable value of the issued and outstanding shares of stock of the appellant company represented by property owned and business done by it in this State, should be corrected by excluding from both the numerator and the denominator of the business fraction used by the Tax Commissioner in making this computation, the value of the sales made by Willard Storage Battery Company of California amounting to $127,458.07, and from the numerator of said fraction the value of the sales made by appellant to customers in Detroit from appellant's warehouses in said city, which sales amount to the sum of $1,427,579.43; and that as thus modified and corrected said order of the Tax Commissioner is affirmed, the tax assessed against the appellant for the year 1939 to be that extended against the taxable value of said shares of stock as determined by said corrected computation.

BOARD OF TAX APPEALS.

## ENTRY

This cause and matter came on to be heard before the Board of Tax Appeals on the appeal of Willard Storage Battery Company, the appellant above named, from a corrected corporation franchise tax assessment made against it as a foreign corporation by the Tax Commissioner under date of November 9, 1939, and from an order of the Tax Commissioner denying an application for review and correction filed by the appellant with respect to said assessment.

Said cause was heard by the Board of Tax Appeals upon a transcript of the proceedings of the Tax Commissioner relating to the determination and assessment of appellant's corporation franchise tax for said year, upon the stipulation of facts signed and filed by their respective counsel for the parties in the case, and upon the arguments and briefs of counsel; and the cause was submitted to said Board for its consideration and determination. Upon consideration thereof the Board finds that on July 7, 1939, the appel-

lant, a corporation organized under the laws of the State of West Virginia and engaged in the business of manufacturing and selling electric storage batteries in the State of Ohio and elsewhere, filed its annual corporation franchise tax report for said year, as required by the provisions of §5495-2 GC; which report as to the information therein contained was in manner and form as required by §5497 GC. In this report the appellant separately stated the value of its property, real and personal, which was owned and used by it in Ohio, and that owned and used by it outside of Ohio; and likewise set out therein its liabilities (less capital and surplus) as of January 1 of said year. On the information thus set out in appellant's report the Tax Commissioner determined the value of the issued and outstanding shares of stock of said corporation as provided in §5498 GC, and fixed such value at the sum of $8,685,091.00. Applying the property fraction indicated by the fair value of appellant's property in Ohio as against the fair value of that owned and used by it in Ohio and elsewhere and, likewise, the business fraction indicated by the value of the business done by the corporation in this state (as determined by the Tax Commissioner) as against the total value of the business of the corporation wherever transacted as set out in appellant's report, the Tax Commissioner determined the taxable valuation of the issued and outstanding shares of stock of the corporation represented by the property owned and business done by it in this state, and found such taxable value to be $5,953,899.00. After the Tax Commissioner, by the application of the property and business fractions above stated, had determined the taxable value of the issued and outstanding shares of the stock of the corporation represented by property owned and business done by the corporation in this state, and after the franchise tax of one-tenth of one per cent had been extended against such valuation as provided in §5499 GC, the appellant acting under the authority

of §5500 GC, filed an application for a review and correction of the determination theretofore made by the Tax Commissioner of the value of the issued and outstanding shares of stock of the corporation represented by the property owned and business done by the corporation in this state. Following the filing of said application for review and correction the Tax Commissioner redetermined the valuation of the issued and outstanding shares of the stock of the corporation represented by the property owned and business done by the corporation in Ohio by the application of the property fraction, above noted, and a business fraction determined by a formula suggested by appellant and set out in its application for review and correction; which method of computation gave a valuation to that part of the issued and outstanding shares of stock of the corporation represented by property owned and businesss done by the corporation in this state in the sum of $4,351,100.00, upon which valuation the franchise tax extended at the rate provided for in §5499 GC, was $4,351.10. The franchise tax of the appellant for the year 1939 was tentatively computed by the Tax Commissioner on this basis and the amount of tax thus determined was paid by the appellant under an agreement by and between the appellant and the Tax Commissioner that the determination of the corporation's franchise tax on this basis for the year 1939 and its payment by said company was without prejudice to the right of the Tax Commissioner to make a further computation of the franchise tax of the corporation for said year, and without prejudice to the right of the appellant to contest the validity of any increased assessment which might result from such further computation by the Tax Commissioner.

Thereafter on or about November 9, 1939, the Tax Commissioner on the facts and figures set out in appellant's report, made a corrected and final determination of the valuation of the issued and outstanding shares of stock of the corporation represented by the

property owned and used and by business done by the corporation in this state; and determined such valuation by the use of the property fraction, above stated, (as to the correctness of which no question is made in this case) and of a business fraction determined by the Tax Commissioner by including in the numerator of such business fraction the value of the sales made during the year 1938 of products which as found by the Tax Commissioner, were manufactured by the appellant at its manufacturing plant in this State ($3,232,867.52), and by including in the denominator of the fraction the value of the sales made by the corporation during said year of products manufactured by it in Ohio and elsewhere ($9,174,659.10). The business fraction thus obtained was the same as that used in the original computation of the franchise tax to be paid by said corporation for said year; and the application of this franchise together with the property fraction above noted resulted in a tax assessment in the amount of $5,953.90; which amount was and is $1602.30 in excess of that previously determined by the Tax Commissioner and paid by the appellant as aforesaid. The appeal of the appellant herein is from the corrected assessment made by the Tax Commissioner, which resulted in the increase herein complained of.

The Board of Tax Appeals on a consideration of the issues of law and fact in this case finds that the Tax Commissioner inadvertently included as a part of appellant's business and as a part of its Ohio business the value of the sales of goods manufactured by a subsidiary corporation, the Willard Storage Battery Company of California, and sold by said subsidiary corporation from its manufacturing plant in California to consumers in California and adjoining states; that the value of such sales was and is the sum of $127,458.07; and that the Tax Commissioner erred in including this amount in either the numerator or denominator of the business fraction used by him in determining the value of the issued and out-

standing shares of stock of the corporation represented by property owned and used and business done by the corporation in Ohio.

The Board of Tax Appeals further finds that the Tax Commissioner included in the numerator of the business fraction used by him, as aforesaid, the value of sales made by the appellant from its warehouse or warehouses in the City of Detroit, Michigan, to customers in said city, which sales were of the amount and value of $1,427,579.43. The Board finds that the Tax Commissioner included the value of such sales in the numerator of the business fraction used by him, as aforesaid, contrary to the express provisions of Rule 275 adopted by the Tax Commissioner under date of October 13, 1939, which excepts from the category of Ohio business sales of such products as are sold by the corporation from warehouses outside of this state. The Board of Tax Appeals, giving effect to said rule and solely for this reason, finds that the Tax Commissioner erred in including the value of such sales in the amount herein stated in the numerator of the business fraction used by him in determining the valuation of the issued and outstanding shares of stock of the corporation represented by property owned and business done by the corporation in this state.

This Board finds that in all other respects the computation and determination made by the Tax Commissioner as to the valuation of the issued and outstanding shares of stock of the appellant corporation represented by property owned and business done by it in this state, and of the corporation franchise tax extended on such valuation was and is correct.

It is, therefore, by the Board of Tax Appeals considered and ordered that the order of the Tax Commissioner under date of November 9, 1939, determining the taxable value of the issued and outstanding shares of stock of the appellant company represented by property owned and business done by it in this state be corrected by excluding from both the numerator and the de-

nominator of the business fraction used by the Tax Commissioner in making such computation, the value of the sales made by the Willard Storage Battery Company of California amounting to $127,458.07, and by excluding from the numerator of said fraction the value of the sales made by appellant to customers in Detroit from appellant's warehouses in said city, which sales amount to the sum of $1,427,579.43; and that as thus modified and corrected said order of the Tax Commissioner is hereby affirmed, the tax assessed against the appellant for the year 1939 to be that extended against the taxable value of its issued and outstanding shares of stock as determined by said corrected computation.

I hereby certify the foregoing to be a true and correct copy of the action of the Board of Tax Appeals of the Department of Taxation, this day taken with respect to the above matter.

HARRY J. ROSE,
Secretary.