(No. 19172.— 

THE ILLINOIS IRON AND BOLT COMPANY *et al.* Appellants, *vs.* LOUIS L. EMMERSON, Secretary of State, Appellee.

*Opinion filed December 20, 1928—Rehearing denied Feb. 7, 1929.*

FYFFE & CLARKE, (COLIN C. H. FYFFE, of counsel,) for appellants.

OSCAR E. CARLSTROM, Attorney General, (B. L. CATRON, of counsel,) for appellee.

Mr. JUSTICE FARMER delivered the opinion of the court:

This is an appeal from a decree of the circuit court of Sangamon county sustaining a demurrer to and dismissing a bill filed against the Secretary of State, appellee, to enjoin him from paying into the State treasury taxes paid by complainant corporations commonly known as franchise taxes. Complainants in the bill were nine corporations, seven of them domestic and two of them foreign corpora-

tions. The bill sets out with respect to each of the complainants the total amount of its issued capital stock, of its property, the amount of it in Illinois, and the total amount of business transacted at or from places in Illinois, a part of which was alleged to be interstate commerce. The bill alleged that in February, 1927, each of the complainants filed in the office of the Secretary of State its annual report, setting out the facts with respect to its capital stock, property and business, and showed the total amount of business transacted at or from places in Illinois and its interstate transactions; that its interstate transactions consisted of sales of goods shipped from places in Illinois to places and purchasers in other States, and that the taxes assessed and collected by the Secretary of State, which were paid under protest, constitute a burden on interstate commerce. The bill alleged the issued capital stock of each of complainants, the amount of franchise tax or license fee paid by each of them, and the amount alleged to be based solely on interstate commerce. The amounts vary from $66 to $927 in the respective cases of the different complainants. The Secretary of State filed a general and a special demurrer. The special grounds of demurrer were, that the bill of complaint by the several complainants was for distinct and separate matters in which all of them were not interested, that they were improperly joined as complainants, and the bill was multifarious. Complainants prayed an appeal from the order dismissing the bill, and the court allowed any or all of them desiring to do so the right to appeal, and eight of them have perfected this appeal.

The merits of the case depend upon whether appellee properly construed section 105 of the Corporation act in assessing the license fee or franchise tax. That section of the statute is as follows:

"Sec. 105. Each corporation for profit, including railroads, except insurance companies, heretofore or hereafter organized under the laws of this State or admitted to do

business in this State, and required by this act to make an annual report, shall pay an annual license fee or franchise tax to the Secretary of State of five cents on each one hundred dollars of the proportion of its issued capital stock, or amount to be issued at once, represented by business transacted and property located in this State, but in no event shall the amount of such license fee or franchise tax be less than that required by this act of corporations having no property or business in this State.

"In the event that the corporation has stock of no par value, its shares, for the purpose of fixing such fee, shall be taken and considered at the amount of the consideration received or to be received by such corporation for such shares."

Appellants contend that appellee, in computing the license fee or franchise tax to be paid by appellants, included the interstate business transacted by appellants as well as intrastate business, and that the tax on interstate business is a direct burden upon interstate commerce and is invalid. Practically the same question involved in this case was considered by this court in the case of a foreign corporation in *American Can Co.* v. *Emmerson,* 288 Ill. 289. In that case the court said: "The rule adopted by the United States Supreme Court is, that while the State may not regulate interstate commerce or impose burdens upon it, it is authorized to levy a tax within its authority, measured by the capital stock in part used in the conduct of such commerce, where the circumstances are such as to indicate no purpose or necessary effect in the tax imposed to burden commerce of that character." (Citing cases.) The *American Can Co. case* was approved and followed in *Hump Hairpin Manf. Co.* v. *Emmerson,* 293 Ill. 387. That case went to the Supreme Court of the United States and was affirmed in 258 U. S. 290. In the course of the latter court's opinion, after citing numerous authorities, the court said: "The turning point of these decisions is, whether in

its incidence the tax affects interstate commerce so directly and immediately as to amount to a genuine and substantial regulation of or restraint upon it, or whether it affects it only incidentally or remotely, so that the tax is not in reality a burden although in form it may touch, and in fact distantly affect it. No formula has yet been devised by which it can be determined in all cases whether or not such a tax is valid, and, applying the repeated declaration of this court in the cases cited and in many others, that the question is inherently a practical one, depending for its decision on the special facts of each case, we are clear that the tax here involved falls within the excepted class described, even though the business done with residents of States other than Illinois be regarded as interstate." The court held in that case that the tax directly imposed upon proceeds of interstate commerce business was only one of three factors used in computing the tax, the other two factors being the amount of property in this State and the amount of proceeds from sales to residents of this State, and the conclusion of the court was that the tax, so far as interstate commerce was concerned, was incidental, remote and unimportant and was not unconstitutional or invalid.

Appellants argue that the *Hump Hairpin case* has been overruled or modified by subsequent decisions of the Supreme Court of the United States, and they cite *Alpha Portland Cement Co.* v. *Massachusetts,* 268 U. S. 203, as sustaining that position. In that case the court did not refer to the *Hump Hairpin case* but to certain language used in *Baltic Mining Co.* v. *Massachusetts,* 231 U. S. 68, which language the court "definitely disapproved." The definite question in this case was not involved in *Air-Way Electric Appliance Corp.* v. *Day,* 266 U. S. 71.

We feel bound, under the decisions of this court in the *American Can Co. case* and the *Hump Hairpin case,* and the decision of the Supreme Court of the United States

affirming the latter, to sustain the tax computed and levied by the Secretary of State. With this view of the case it is unnecessary to discuss the questions of pleading raised by the demurrer.

The decree is affirmed.

*Decree affirmed.*