## ALUMINUM CO. OF AMERICA v EVATT

Board of Tax Appeals

No 851. Decided Jan 27, 1942

M. B. & H. H. Johnson, Cleveland, and Lawrence D. Stanley of Burr, Porter, Stanley & Treffinger, Columbus, for appellant.

Thomas J. Herbert, Attorney General, and Perry L. Graham, Asst. Attorney General, Columbus, for appellee.

## OPINION

This cause and matter is before the Board of Tax Appeals on the appeal of Aluminum Company of America, the appellant above named, from an order of the Tax Commissioner under date of November 8, 1939, making a corrected franchise tax assessment against the appellant for said year.

On March 31, 1939, the appellant, a corporation organized under the laws of the State of Pennsylvania and engaged in the business of manufacturing and selling aluminum and aluminum products in the State of Ohio and elsewhere, filed its annual corporation franchise tax report for said year, as required by the provisions of §5495-2 GC; which report as to the information therein contained, was in the form prescribed by §5497 GC. In this report the appellant separately stated the value of its property, real and personal, which was owned and used by it in Ohio, and that owned and used by it outside of Ohio, and likewise set out therein its liabilities (less capital and surplus) as of January first of said year. On the information thus set out in appellant's report the Tax Commissioner determined the base value of the issued and outstanding shares of stock, as provided in §5494 GC, and fixed such value at the sum of $180,-408,175.00. Then applying the property fraction indicated by the fair value of appellant's property in Ohio as against the fair value of that owned and used by it in Ohio and elsewhere (as to the correctness of which property fraction no question is made in this case) and, likewise, the business fraction indicated by the value of the business done by the corporation in this state (as determined by the Tax Commissioner) as against the total value of the business of the corporation wherever transacted, as set out in appellant's report, the Tax Commissioner determined the taxable value of the issued and outstanding shares of stock of the corporation represented by the property owned and business done by it in this state, and found such taxable value to be $13,722,-387.00. The Tax Commissioner in determining said business fraction apparently included in the numerator thereof the value of all sales of aluminum and aluminum products made by the appellant during the year 1938 from its manufacturing plant at Cleveland, Ohio, and included in the denominator of the fraction the value of the sales made by appellant during said year of aluminum and aluminum products manufactured by it in Ohio and elsewhere.

After the Tax Commissioner, by the application of the property and business fractions above noted, had determined the taxable value of the issued and outstanding shares of the stock of the corporation represented by the property owned and business done by the corporation in this state, and after the franchise tax of one-tenth of one per cent had been extended against such valuation, as provided in §5499 GC, the appellant acting under the authority of §5500 GC, and within the time limited in said section, filed an application for a review of the determination theretofore made by the Tax Commissioner of the value of the issued and outstanding shares of stock of the corporation represented by the property owned and business done by it in this state. In this application for the review of the determination of the Tax Commissioner therein complained of, the appellant did not question the valu-

ation of the issued and outstanding shares of the stock of the corporation as determined by the Tax Commissioner, or the correctness of the property fraction used by said officer in determining the taxable value of the issued and outstanding shares of stock represented by the property owned and business done by the corporation in this state. Appellant, however, in said application questioned the correctness of the business fraction used by the Tax Commissioner in making this computation; and as to this the appellant, as previously indicated in the annual report filed by it for said year, contended that the business fraction used by the Tax Commissioner in making such computation should be ascertained by taking the average of two fractions: (1) the value of the sales of products manufactured by the appellant at its manufacturing plant in Ohio, whereever sold ($8,710,581.62) as against the value of sales made of all of its products produced in Ohio and elsewhere ($71,147,721.65); and (2) total sales from its Ohio manufacturing plant (or warehouses) to Ohio customers ($1,274,452.-16) as against the total sales of all of its products everywhere ($71,147,721.65). Averaging the business fraction thus obtained with the property fraction and applying the resulting fraction to the valuation of the issued and outstanding shares of stock of the corporation ($180,408,175.00) gave a value to that part of the issued and outstanding shares of stock of the corporation represented by property owned and business done in this state of $8,999,481.00. Thereupon and pursuant to appellant's application for review and redetermination, the Tax Commissioner on or about September 8, 1939, tentatively redetermined the amount of appellant's franchise tax for the year 1939 on the basis suggested by appellant in its said application, and determined said tax to be the sum of $8,999.48 based on a taxable valuation of $8,999,481.00, as above stated. The appellant paid said sum of $8,999.48 to the treasurer of state in payment of its franchise tax for said year. However, by an agreement made by and between appellant and the Tax Commissioner at said time, the determination of the corporation's franchise tax on this basis for the year 1939 and its payment by said company were without prejudice to the right of the Tax Commissioner to make a further computation of the franchise tax of the corporation for said year and, likewise, without prejudice to the right of the appellant to contest on its merits any increased assessment which might result from such further computation by the Tax Commissioner.

Thereafter, on October 13, 1939, the Tax Commissioner on further consideration of the factors to be employed and of the resulting method to be used by him in determining the business fraction to be applied together with the ascertained property fraction, in determining the proportion of the value of the issued and outstanding shares of stock of the appellant and of other manufacturing corporations doing business in Ohio, represented by the property owned and business done by such corporations in this state, and acting under the authority conferred upon him by §§1464-1 and 1464-4 GC, adopted and promulgated Rule No. 275, which rule is as follows:

"Business done in and out of Ohio by a corporation subject to the payment of franchise taxes shall be determined under §5498 GC, by allocating to the business fraction therein provided sales in and out of Ohio.

"All sales of goods from warehouses in Ohio, wherever manufactured, shall be considered as Ohio sales.

"In the case of manufacturing companies, all sales of goods manufactured in Ohio, wherever sold, shall be considered as Ohio sales, except sales of such products as are sold from warehouses outside of this state.

"The denominator of such business fraction shall in all cases be the total sales wherever made."

Applying this rule to the facts and figures reported by the taxpayer the Tax Commissioner determined the busi-

ness fraction used by him by including in the numerator thereof the value of the sales made during the year 1938 of products which, as found by the Tax Commissioner, were manufactured at the plant of the corporation in this state and sold from said plant ($8,-710,582.00) and by including in the denominator of the fraction the value of the sales made by the corporation during said year of products manufactured in Ohio and elsewhere ($71,147,722.00). On the application of the business fraction thus obtained, together with the property fraction above noted, the Tax Commissioner found and determined that the proportionate part of the value of the issued and outstanding shares of the corporation represented by property owned and business done by it in this state was $13,722,387.00. The tax extended on this valuation at the rate prescribed by §5499 GC, was and is the sum of $13,722.39, which amount is $4,722.91 in excess of the sum of $8,999.48 which was the amount of the franchise tax tentatively assessed against the corporation on its application for review theretofore filed with the Tax Commissioner and on the formula therein suggested with respect to the determination of the business fraction to be used by the Tax Commissioner in determining the franchise taxes of the corporation for said year.

Following the determination of this increased franchise tax assessment in the amount of $4,722.91 and the certification of the same to the treasurer of state for collection, and following the denial by the Tax Commissioner of an application for review and correction with respect to said increased tax assessment filed by the corporation, said corporation, acting under the authority provided by §5611 GC, filed with the Board of Tax Appeals an appeal from said increased franchise tax assessment for the year 1939 and from the determination made by the Tax Commissioner of the value of the issued and outstanding shares of stock of the corporation represented by property owned and business done by it in this state, which determination resulted in the increased tax assessment complained of. The case presented by this appeal was submitted to the Board of Tax Appeals upon a transcript of the proceedings of the Tax Commissioner, upon an agreed statement of the facts in the case, and upon the arguments and briefs of counsel.

Although the appellant in the appeal filed by it with the Board of Tax Appeals refers to Rule No. 275 adopted by the Tax Commissioner, as above noted, and therein contends that as to the appellant and on the facts of this case said rule is unlawful and unreasonable, this proceeding is not one under the provisions of §1464-4 GC, invoking the jurisdiction and authority of the Board of Tax Appeals to determine whether this rule is reasonable or unreasonable within the purview of this section of the General Code; but the question presented to the Board on this appeal is whether said franchise tax assessment made against the appellant is erroneous, which question, obviously, on the facts above stated, involves the primary question as to the correctness of the business fraction used by the Tax Commissioner in making the computation which led to such increased assessment.

The determination of the question or questions thus presented requires a consideration not only of the provisions of the rule of the Tax Commissioner, above referred to, and of the pertinent statutory provisions relating to and providing for the assessment of franchise taxes against corporations in this state, but also requires a consideration of fundamental principles of law applicable to cases of this kind. As to this it is noted that as to foreign corporations the tax here in question is "the fee charged against each corporation organized for profit under the laws of any state or country other than Ohio, except as provided herein, for the privilege of doing business in this state or owning or using a part or all of its capital or property in this state or for holding a certificate of compliance with the laws of this state authorizing it to do business in this state, during the

calendar year in which such fee is payable." §5495 GC.

Sec. 5495-2 GC, provides that annually, between the first day of January and the thirty-first day of March, each corporation incorporated under the laws of this state for profit, and each foreign corporation for profit, doing business in this state or owning or using a part or all of its capital or property in this state, shall make a report in writing to the Tax Commissioner in such form as may be prescribed; and §5497 GC, sets out the nature of the information required to be given in such report and, among other things, provides that such report shall include a statement as to "the total amount of business done and the amount of business done within the state by said corporation during its preceding annual accounting period, given separately". After the filing of such annual corporation report the Tax Commissioner, under the provisions of §5498 GC, is required to determine the value of the issued and outstanding shares of stock of the corporation filing such report. This section further provides that the Tax Commissioner shall then determine the base upon which the tax provided for in §5499 GC, shall be computed, as follows:

"Divide into two equal parts the value as above determined of the issued and outstanding shares of stock of each corporation filing such report. Take one part and multiply by a fraction whose numerator is the fair value of all the corporation's property owned or used by it in Ohio and whose denominator is the fair value of all its property wheresoever situated, in each case eliminating any item of good will; take the other part and multiply by a fraction whose numerator is the value of the business done by the corporation in this state during the year preceding the date of the commencement of its current annual accounting period and whose denominator is the total value of its business during said year wherever transacted."

This section further provides that thereupon the Tax Commissioner shall certify to the auditor of state the amount determined by him "through adding the two figures thus obtained for each corporation". By §5499 GC, it is provided that "the auditor of state shall charge for collection from each such corporation a fee (tax) of one-tenth of one per cent upon such value so certified and shall immediately certify the same to the treasurer of state".

As above noted, the primary question for consideration in this case is whether the Tax Commissioner in making the computation determining the amount of the franchise tax to be paid by the appellant in the year 1939, used the proper business fraction to determine the value of the business done by the appellant in this state during the year 1938 as compared with the total value of its business during said year wherever transacted, or whether, on the other hand, the Tax Commissioner in determining such business fraction included in the numerator thereof sales items which under the substantive law applicable thereto, should have been excluded from the numerator of such business fraction. In this connection it does not appear that the appellant in this case denies, generally, the right of the Tax Commissioner to take the value of the sales made by the corporation from its manufacturing plant in Ohio and elsewhere during the year 1938 in determining the proportionate value of the business done by the corporation in this state; but aside from its contention that the Tax Commissioner in determining the business fraction to be used by him in his computation should have averaged the separate fractions (predicated on sales) indicating, respectively, the industrial and commercial activities of the company during said year, as set out in its application for review filed with the Tax Commissioner in this case, the appellant likewise contends that the Tax Commissioner included in the numerator of the business fraction used by him items of sales made by the corporation from its manufacturing

plant in Ohio which should not have been included therein.

As to the contention made by the appellant that the Tax Commissioner in determining the proportion of business done by the corporation in this state, should have separately considered the factors of manufacturing operations and sales of its finished products, respectively, and should have averaged the fractions represented by the several factors, it is to be observed that although the sections of the General Code providing for the franchise tax to be paid by corporations for the privilege of doing business in this state provides that such tax shall be determined in part by a consideration of the value of the business done by the corporation in this state as compared with the total value of its business wherever transacted, these statutory provisions, like the laws of the State of Illinois and, perhaps, of other states as well, providing for corporation franchise taxes, do not direct the use of any particular factor or factors in determining the proportion of the business done by the corporation in the state. In this situation it is competent for the taxing authority charged with the ██ █ administration of the franchise tax law in determining the amount of franchise tax to be paid by a manufacturing corporation having a manufacturing plant in Ohio to determine the proportionate amount of business done by the corporation in this state by a consideration of the value of the sales of its manufactured products made from such manufacturing plant or from warehouses or other stocks of goods of the corporation located in the State. See Illinois Iron & Bolt Company v Emmerson, Secretary of State, 333 Ill. 351; Hump Hairpin Manufacturing Company v Emmerson, Secretary of State, 258 U. S. 295; Western Cartridge Company v Emmerson, Secretary of State, 281 U. S. 511. In this connection it is pertinent to note that ever since the original enactment of the Corporation Franchise Tax Law of this state providing for the determination of the amount of such tax on the basis of the proportion of the property owned and business done by the corporation in this state, the Tax Commission of Ohio in administering this law as to a manufacturing corporation, has measured the proportionate amount of its business in Ohio by the value of the sales of its manufactured products from its factory or warehouse or from other stocks of its manufactured goods in this state. Rule No. 275, above referred to, adopted by the Tax Commissioner under date of October 13, 1939, is but a confirmation of the uniform rule of practice governing the determination of the franchise taxes to be paid by manufacturing corporations doing business in this state. As to this it is further noted that the Attorney General in an opinion directed to the Tax Commission of Ohio under date of April 15, 1915, construing §5502 GC, (as to foreign corporations the section preceding §5498 GC) said: "I am of the opinion that under the provisions of §5502 GC, it is the duty of the commission to select some factor or. criterion which will represent the volume of the business done in Ohio as compared with the volume of the business of the company as a whole; and that the business being manufacturing, and all manufacturing being for the purpose of sale, the sales of the products of the factories may be used as such a measure of the volume of the manufacturing business. When so used the sales do not represent commerce at all, but manufacture, and may just as appropriately be used for this purpose as any other criterion, such as the total value of the manufactured articles." O. A. G. 1915, Vol. 1, p. 460. See O. A. G. 1915, Vol. 3, p. 2411; O. A. G. 1932, Vol. 2, p. 615; O. A. G. 1933, Vol. 2, p. 1101; O. A. G. 1937, Vol. 1, p. 220.

The sections of the General Code of Ohio providing for corporation franchise taxes and for the determination of the amount of such taxes have been amended from time to time since the original enactment; and the fact that the legislature with full knowledge of this uniform rule and practice by which the proportionate value of the business

done by manufacturing corporations in this state has been determined on a consideration of the value of sales made by such corporations from manufacturing plants and warehouses in this state, has not by any legislative enactment prescribed any other or different factor to be used by the taxing authority in determining the proportionate value of the business done by such corporations in the state as compared with the value of the total business done by the corporations, is persuasive evidence of legislative recognition and approval of the method used by the taxing authority in administering the franchise tax laws above noted. Brewster v Gage, 280 U. S. 327; **State ex rel v Brown, 121 Oh St 73, 76.**

In this connection it may be observed that although the formula above referred to, suggested by the appellant as the method to be used by the Tax Commissioner in determining the business fraction to be applied together with the property fraction in the computation of appellant's franchise tax for the year 1939, is somewhat arbitrary and is not responsive in any approximate way to the basic contentions made by the appellant with respect to the application of the law to the facts of this case touching the question of the proper computation of said franchise tax, this formula as the same is presented by the appellant herein, seems to be predicated on the fact that as to a considerable and substantial part of the aluminum products which were manufactured by the appellant at its plant at Cleveland, Ohio, and which as finished products were sold from said plant, such aluminum products were partially manufactured in states other than Ohio before they were delivered to appellant's plant at Cleveland where the manufacturing operations on such products were completed. As to this contention of the appellant it may be stated, generally, that where a franchise or other excise tax is measured or limited by the value of the sales of finished products sold or installed by the taxpayer in the taxing

state, the amount and value of such sales may not be reduced or otherwise affected by allocating any part of the sale price of such goods to the cost of their manufacture in whole or in part out of such state. Eaton, Crane & Pike Company v Commonwealth, 241 Mass. 309; Dravo Contracting Company v James, 114 Fed. (2d) 242, 246; Panitz v District of Columbia, 122 Fed. (2d) 61. And this rule likewise applies as to sales of its products by a manufacturing corporation from its plant, warehouses or other repositories in the taxing state, although such products are wholly manufactured by the corporation in some other state or states. See Ford Motor Company v Clark, 100 Fed. (2d) 515, affirmed Ford Motor Company v Beauchamp, 308 U. S. 331. In this connection, it seems clear to us that the case of James v Dravo Contracting Company, 302 U. S. 134, 82 L. Ed. 155, cited by appellant on this point, is clearly distinguishable from the case here presented so far as this question is concerned. In the case cited by appellant it appeared that certain equipment installed by the taxpayer as a part of a construction project in the State of West Virginia, the taxing state, was not only manufactured in another state (Pennsylvania), but that the taxpayer had received payment for the same in such other state according to the terms of his contract; and inasmuch as with respect to said taxpayer the tax there in question was one upon his gross receipts as a contractor for the construction of said project, it was held that the receipts of said contractor in such other state for work there done by him were not subject to the tax there in question. And for this obvious reason the case cited by appellant has been distinguished with respect to the question here under consideration. Ford Motor Company v Beauchamp, 308 U. S. 331, 84 L. Ed. 304, 307; Dravo Contracting Company v James, 114 Fed. (2d) 242, 246, supra. We are of the view, therefore, that the Tax Commissioner did not err in denying appellant's application for review so far as this question is concerned.

Aside from the contention made by the appellant as to the separate allocation of sales with respect to manufacturing and sales activities, respectively, of the corporation, hereinabove considered and discussed, the appellant relying upon the case of Gwin, White & Prince v Henneford, 305 U. S. 434, 83 L. Ed. 272; Wright Aeronautical Corporation v Martin, State Tax Commissioner, 19 Atl. (2nd) 338, decided by the Board of Tax Appeals of New Jersey; and Flowers, Secretary of State v Pan American Refining Corporation, 154 S. W. (2nd) 982, decided by the Court ·of Civil Appeals of Texas, contends that the tax commissioner erred in including as Ohio business and in the numerator of the business fraction by which the proportionate amount of such Ohio business was determined, sales of finished products made by the appellant from its manufacturing plant at Cleveland, Ohio, to customers in states other than Ohio; and this on the stated ground that such sales were made in interstate commerce. As to this it appears that during the year 1938 the appellant sold from its plant at Cleveland, Ohio, finished products there manufactured having a sale value of $8,710,581.00, of which sales of the value of $1,274,452.00 were made to Ohio customers, and sales of the value of $7,436,129.00 were made to customers outside of Ohio, on which shipments of the products so sold were made from the company's Cleveland plant to points outside of Ohio.

In the consideration of the question here presented with respect to the sales made by the appellant from its plant at Cleveland to customers outside of Ohio and the shipment of products so sold to points outside of this state, it is to be noted that appellant is not engaged in a business the activities of which are solely in or relating to interstate commerce. On the contrary, it appears that the appellant is engaged in the manufacture of aluminum and aluminum products at a plant operated by it in Ohio, from which plant sales are made indifferently to customers in Ohio and elsewhere. In other words, the appellant by reason of its manufacturing operations is engaged in a local business in this state and, by reason of this fact, is subject to the corporation franchise tax provided for by the sections of the General Code above referred to, which tax is measured as therein provided. Again it is noted in this connection that the tax here in question is not one on the privilege of engaging in interstate business. Moreover, this tax is not one on the sales made by appellant of the goods manufactured by it in Ohio, nor is it a tax on the gross receipts or income of the appellant derived from such sales made in interstate commerce or otherwise; but this tax as to appellant, a foreign corporation, is a franchise tax on the privilege the corporation has of doing business in this state and of owning and using a part of its capital and property in this state, which tax is measured in part by the proportion of the business done by the corporation in this state of the total business done by said corporation. The distinction implicit in this statement with respect to this question as to the same has been presented by the appellant on the facts of this case, has been recognized in a number of cases decided by the Supreme Court of the United States. Thus in the case of Cloverdale v Arkansas-Louisiana Pipeline Company, 303 U. S. 604, 610, 82 L. Ed. 1048, it was said: "While a privilege tax by a state for engaging in interstate business has frequently met the condemnation of this Court as a regulation of commerce, privilege taxes for 'carrying on a local business', even though measured by interstate business, have been sustained. American Mfg. Co. v St. Louis, 250 U. S. 459, 69 L. Ed. 1084, 39 S. Ct. 522; Ficklen v Taxing Dist., 145 U. S. 1, 36 L. Ed. 601, 12 S. Ct. 810, 4 Inters. Com. Rep., 79, of Western Livestock v Bureau of Revenue, 303 U. S. 250, 82 L. Ed. 823, 58 S. Ct. 546." In the recent case of McGoldrick v Berwind-White Coal Mining Company, 309 U. S. 33, 57, 58, 84 L. Ed. 565, 577, the Supreme Court of the

United States referring to previous decisions made by that Court distinguishing taxes on gross receipts derived from sales in interstate commerce from a tax conditioned upon the exercise of the taxpayer's franchise or privilege of manufacturing in the taxing state, said:

"It is true that a state tax upon the operations of interstate commerce measured either by its volume or the gross receipts derived from it has been held to infringe the commerce clause, because the tax if sustained would exact tribute for the commerce carried on beyond the boundaries of the taxing state, and would leave each state through which the commerce passes free to subject it to a like burden not borne by intrastate commerce. See Western Live Stock v Bureau of Revenue, supra (303 U.S. 255, 82 L. Ed. 827, 58 S. Ct. 546, 115 A. L. R. 944); Gwin, White & Prince v Henneford, supra (305 U. S. 439, 83 L. Ed. 275, 59 S. Ct. 325).

"In J. D. Adams Mfg. Co. v Storen, supra (304 U. S. 311, 82 L. Ed. 1369, 1370, 58 S. Ct. 913, 117 A. L. R. 429), a tax on gross receipts, so far as laid by the state of the seller upon the receipts from sales of goods manufactured in the taxing state and sold in other states, was held invalid because there the court found the receipts derived from activities in interstate commerce, as distinguished from the receipts from activities wholly intrastate, were included in the measure of the tax, the sales price, without segregation or apportionment. It was pointed out, pages 310-312, that had the tax been conditioned upon the exercise of the taxpayer's franchise or its privilege of manufacturing in the taxing state, it would have been sustained, despite its incidental effect on interstate commerce since the taxpayer's local activities or privileges were sufficient to support such a tax, and that it could fairly be measured by the sales price of the goods."

In the case of J. D. Adams Mfg. Co v Storen, 304 U. S. 311, 312, 82 L. Ed. 1365, 1369, the Supreme Court, referring to the tax there under consideration (a state gross income tax) and distinguishing such tax from that of the kind involved in this appeal, said:

"It is not a charter fee or a franchise fee measured by the value of goods manufactured or the amount of sales such as the State would be competent to demand from domestic or foreign corporations for the privilege conferred. It is not an excise upon the privilege of producing or manufacturing within the State, measured by the volume of production or the amount of sales."

The Supreme Court, likewise, in this case, distinguishing the tax then before it from that involved in the case of American Manufacturing Company v St. Louis, 250 U. S. 459, 63 L. Ed. 1084, and speaking of the earlier case referred to, said:

"That case dealt with a municipal license fee for pursuing the occupation of a manufacturer in St. Louis. The exaction was not an excise tax laid upon the taxpayer's sales or upon the income derived from sales. The tax on the privilege for the ensuing year was measured by a percentage of the past year's sales. The taxpayer had during the preceding year removed some of the goods manufactured to a warehouse in another state, and upon sale, delivered them from the warehouse. It contended that the city was without power to include these sales in the measure of the tax for the coming year. The court held, however, that the tax was upon the privilege of manufacturing within the state and it was permissible to measure the tax by the sales price of the goods produced rather than by their value at the date of manufacture."

In the case of American Manufacturing Company v City of St. Louis, 250 U. S. 459, 63 L. Ed. 1084, it was held that a tax upon the privilege of pursuing the business of manufacturing in the City of St. Louis imposed by an ordin-

ance of that city pursuant to the auauthority of a provision of its charter, was not an unconstitutional regulation of interstate commerce merely because, as to the taxpayer there represented, the amount of the tax was measured by the amount and value of the sales of goods manufactured in its local factory, whether such goods were sold within or without the state, either in domestic or interstate commerce. As recognized by the Supreme Court of the United States in later cases above referred to, the case of the American Manufacturing Company v St. Louis distinctly supports the view that as to a manufacturing corporation having its manufacturing plant in the taxing state, sales made by the corporation from its plant to customers in other states may be considered, together with the intrastate sales made by it, in measuring the amount of a franchise or privilege tax to be paid by such corporation. In the case of Hump Hairpin Manufacturing Company v Emmerson, 258 U. S. 295, 66 L. Ed. 623, 625, the court in sustaining a tax assessed against said company under the corporation franchise tax law of the State of Illinois said:

"While a state may not use its taxing power to regulate or burden interstate commerce (United States Exp. Co. v Minnesota, 223 U. S. 335, 56 L. Ed. 459, 32 Sup. Ct. Rep. 211; International Paper Co. v Massachusetts, 246 U. S. 135, 62 L. Ed. 624, 38 Sup. Ct. Rep. 292. Ann. Cas. 1918C, 617), on the other hand it is settled that a state excise tax which affects such commerce, not directly, but only incidentally and remotely, may be entirely valid where it is clear that it is not imposed with the covert purpose or with the effect of defeating Federal constitutional rights. As coming within this latter description, taxes have been so repeatedly sustained where the proceeds of interstate commerce have been used as one of the elements in the process of determining the amount of a fund (not wholly derived from such commerce) to be assessed, that the principle of the

cases so holding must be regarded as a settled exception to the general rule. * * * The turning point of these decisions is whether, in its incidence, the tax affects interstate commerce so directly and immediately as to amount to a genuine and substantial regulation of, or restraint upon, it, or whether it affects it only incidentally or remotely, so that the tax is not in reality a burden, although in form it may touch, and, in fact, distantly affect, it."

The decision of the court in the case of Hump Hairpin Manufacturing Company v Emmerson was followed in the later decisions of Illinois Iron & Bolt Company v Emmerson, 333 Ill. 351, 164 N. E. 667 and Western Cartridge Company v Emmerson, 281 U. S. 511, 74 L. Ed. 1004, both of which cases, likewise, arose under the corporation franchise tax law of the State of Illinois. In the case of Illinois Iron & Bolt Company v Emmerson, supra, the Supreme Court of Illinois held, as indicated in the headnote of the last named report of this case, as follows:

"Where secretary of state, in computing franchise tax to be paid by corporations under Corporation Act (Smith-Hurd Rev. St. 1927, c. 32) par. 105, on each $100 of proportion of capital stock represented by business transacted and property located in state, included interstate business transacted by corporations as well as intrastate business, tax was not invalid, since tax imposed on interstate commerce was incidental."

In the case of Western Cartridge Company v Emmerson, supra, it was held as to the petitioner, a foreign corporation engaged in the manufacture of products in the State of Illinois, that although the acceptance by the corporation of orders for its products to be shipped to other states and foreign countries, and what was thereafter done by it in filing such orders, became component parts of interstate or foreign commerce, such interstate commerce was not unlawfully burdened by the inclusion of sales of such products manu-

factured in the state and shipped to customers in other states, in computing a state franchise tax measured at a prescribed rate on the proportion of the issued capital stock of the company represented by the proportion of its business transacted and property located in the state. The court in its opinion in this case said:

"The tax in question was not laid directly upon interstate commerce, or any of its elements. For the determination of the amount the taxpayer's business and property located in Illinois is divided by the total of all its business and property and that percentage is applied to the issued shares and the resulting number taken for taxation at the rate of 5 cents per $100. As the amount depends on the relation each to the others of the various elements employed in the calculation, the fee or tax does not directly depend upon the amount of the taxpayer's interstate transactions. The exaction may arise while the sales to customers outside Illinois decline and may fall while such sales increase.

"The amount imposed upon petitioner did not even indirectly burden the interstate transportation resulting from the shipping directions given by petitioner in fulfillment of its contracts of sale. There is nothing to indicate that by the enactment in question the state intended to regulate or burden such commerce or to discriminate as between sales to Illinois customers and those made to buyers in other states and countries. The tax cannot be said directly or by necessary operation to affect any of the things done by petitioner which, by reason of transportation of goods to places outside Illinois in accordance with the directions of the purchasers, became elements or component parts of interstate or foreign commerce. Petitioner's sales prices are based on deliveries to common carriers at its factories. The expense of transportation is not involved in the calculation. And it is plain that, if the fee or tax in question affected petitioner's interstate or foreign commerce at all, the burden

was indirect and remote and not a violation of the commerce clause."

Referring to the cases upon which the appellant herein more particularly relies in support of its contention that the action of the Tax Commissioner in including in the numerator of the business fraction used by him the value of sales of products from its plant at Cleveland, Ohio, to customers in other states was in violation of the commerce clause of the Federal Constitution, the first case herein noted is Gwin, White & Prince, Inc. v Henneford, 305 U. S. 434, 83 L. Ed. 272. That case arose under a statutory enactment of the State of Washington which imposed "a tax for the act or privilege of engaging in business activities" upon every person (including corporations) "engaged within this state in any business activity", at the rate of one-half of one per cent of the "gross income of the business". As against the appellant in that case, a corporation whose only activities consisted of acting as the agent or representative of local fruit growers' organizations in marketing in other states fruits grown in the State of Washington, and in maintaining representatives of the agency in other states and directing their activities in all matters pertaining to the sale, shipment, transportation, and delivery of such fruits to purchasers in other states, collecting and remitting the proceeds of such sales and receiving for all of such services rendered by it a fixed sum for each box of fruit sold, it was held that the tax imposed by this statute was in violation of the commerce clause of the Federal Constitution. All of the activities of this corporation as an agency of the fruit growers of the State of Washington in the sale of fruit grown by them related to interstate commerce; and inasmuch as some of such activities were carried on in other states by representatives of the agency in such states, one of the grounds relied upon by the Court in condemning this tax as a violation of the commerce clause of the Federal Constitution is stated in the opinion of the Court as follows: "If

Washington is free to enact such a tax, other states to which the commerce extends may, with equal right, lay a tax similarly measured for the privilege of conducting within their respective territorial limits the activities which contribute to the service." Moreover, since all of the business of the appellant corporation was interstate in its character, and inasmuch as the amount of the tax based on the gross income of the corporation was directly proportional to the volume of such interstate business, the Court further held as a reason for condemning the tax that the same "though nominally imposed upon appellant's activities in Washington, by the very method of its measurement reaches the entire interstate commerce service rendered both within and without the state and burdens the commerce in direct proportion to its volume". The case of Gwin, White & Prince, Inc. v Henneford, supra, is obviously distinguishable with respect to the question at hand from the case now before this Board on the appeal of the Aluminum Company of America. As above noted, Gwin, White & Prince, Inc. was engaged exclusively in interstate commerce in the conduct of its business, and the tax against it under the law and under consideration was so measured as to amount as to be in substance and effect a tax on the gross receipts of its business, and was directly proportioned to the amount of such business. In the case now before this Board on the appeal of the Aluminum Company of America it appears that the appellant is a corporation engaged in the manufacture of aluminum and aluminum products at a manufacturing plant in this state; and that it is exercising its privilege of doing business in the State of Ohio and of owning and using a part of its capital in this state. In this situation the appellant company in the case now before us is clearly subject to the franchise tax provided for by §§5495 et seq GC; which tax is not one on the income or gross receipts of the company with respect to its activities in this state, nor is such tax even measured by such income or gross receipts

in any proportional way by the income or gross receipts of the corporation referable to business done by it in this state. On the contrary, the tax assessed against the appellant in this case is, under the provisions of our law, measured only in part by the value of the business done by the corporation in this state; which business as to the value thereof in this state, is computed not on the gross income or gross receipts of the company with respect to its business in Ohio, but, as in the cases of American Manufacturing Company v St. Louis, Hump Hairpin Company v Emmerson, and Western Cartridge Co. v Emmerson, supra, is computed on the value of sales of its manufactured products made from its manufacturing plant in this state. In this connection it is noted that the Court in its opinion in the case of Gwin, White & Prince, Inc. v Henneford, supra, expressly states that the tax upheld by that Court in American Manufacturing Company v St. Louis, supra, was not open to the objection directed to the tax there in question. And inasmuch as the case now before this Board on the appeal of the Aluminum Company of America is, we think, more directly controlled with respect to the question here under consideration by the cases of American Manufacturing Company v St. Louis, Hump Hairpin Company v Emmerson, and Western Cartridge Company v Emmerson, supra, we are of the view that the case of Gwin, White & Prince, Inc. v Henneford, supra, is no more applicable to this case than it would be to cases of the kind considered and decided in American Manufacturing Company v St. Louis, Hump Hairpin Company v Emmerson and Western Cartridge Company v Emmerson, supra. In other words, as distinguished from the tax under consideration in the case of Gwin, White & Prince, Inc., in its application to the appellant in that case the tax now before us under the laws of this state is, as to the appellant in this case, like that under consideration in the case of American Manufacturing Company v St. Louis, one which, as to the current year in question, is meas-

ured with respect to the business done by the appellant in this state by the value of the sales made by it in the preceding year of products manufactured by the company at its plant in this state, which sales were made indifferently to customers both in and out of the state. The only distinction between the tax here in question in its application to the appellant in this case from that considered by the Court in the case of American Manufacturing Company v St. Louis is that in the case cited the tax was measured wholly by the value of the business done by the corporation during the preceding year, measured by the value of the sales of its manufactured products made during such year, while the tax here under consideration, like the corporation franchise tax of the State of Illinois considered in the Hump Hairpin Company and Western Cartridge Company cases, is one measured in part by the business done by the appellant during the preceding year and in part by the property owned and used by it in this state. Obviously, no claim can be justly made that this distinction with respect to the measurement of the tax in any way affects the case of American Manufacturing Company v St. Louis as an authority supporting the tax here in question with respect to the question here under consideration and supporting the view that as to this question the case of Gwin, White & Prince, Inc. v Henneford is clearly distinguishable from the case now before this Board.

With respect to the immediate question here under consideration, our attention has been called to the case of Wright Aeronautical Company v Martin, 19 Atl. (2nd) 338, recently decided by the Board of Tax Appeals of New Jersey. In this case the board of tax appeals of said state held that R. S. sections 54:32A-1 et seq of the laws of that state providing for the assessment of a privilege tax against foreign corporations doing business in that state, based upon the proportion of capital stock issued, which "gross income from business done in this state bears to total gross income from entire business", require a determination by the State Tax Commissioner of the proposition of intrastate sales to total sales of the company, and that the inclusion by the Tax Commissioner within "gross income from business done in this state", of such portion of the receipts from out-of-state sales of products manufactured by the company in New Jersey as he deemed was allocable to the cost of manufacturing such products at its plant in New Jersey, was not authorized by the provisions of said act. Although we are in accord with the view of the New Jersey Board of Tax Appeals that under the facts in the case there could be no allocation of sales receipts of the corporation as between its manufacturing and other activities, we are unable to determine from the opinion of the board of tax appeals in the case above cited whether the facts before the board in that case fairly presented the question now before this Board on the appeal filed by appellant in this case. Although it appears from the opinion in the cited case that the petitioner in that case had its manufacturing plant in New Jersey and sold its products there manufactured "to customers within as well as out of the state", it does not affirmatively appear whether sales to customers out of the state were made directly from the manufacturing plant of said company in New Jersey or whether, on the other hand, the manufactured products of the company were shipped by it to warehouses, storerooms, or other repositories in other states and were there sold to customers. In this connection the fact that the Board of Tax Appeals of New Jersey cites the case of Ford Motor Co. v Clark, 100 Fed. (2d) 515, 308 U. S. 331, as a case converse on the facts to the case there under consideration, is some indication that in the case before said board it appeared that the sales there in question were not made directly from the plant of the company in New Jersey to customers in other states, but that such sales were made from repositories of the company in other

states and to customers of these respective states where payments therefor were made and received. In any view as to this question, we are inclined to the opinion that the decision in the case of Wright Aeronautical Co. v Martin, supra, as an authority should be limited to the particular case before the board of tax appeals making said decision. And we cannot ascribe any weight to said decision on the question now before this Board; which question, as above noted, involves a consideration of sales made by the appellant directly from its manufacturing plant in Ohio to customers in other states.

Counsel for the appellant herein have likewise called to our attention the case of Flowers, Secretary of State v Pan American Refining Corporation, 154 S. W. (2nd) 92, recently decided by the Court of Civil Appeals of Texas. The question considered and determined by the court in this case was as to the construction to be placed upon a statute of that state which provided that: "Every domestic and foreign corporation heretofore or hereafter' chartered or authorized to do business in Texas, shall, * * * each year, pay * * * a franchise tax * * *, based upon that proportion of the outstanding capital stock, surplus and undivided profits, plus the amount of outstanding bonds, notes and debentures, other than those maturing in less than a year from the date of issue, as the gross receipts from its business done in Texas bears to the total gross receipts of the corporation from its entire business, which tax shall be computed at the following rates for each one thousand dollars ($1,000.00) or fractional part thereof; one dollar ($1.00) to one million dollars ($1,000,000.00), sixty cents (60c) * * *." Touching the question of the application of this statute to the facts of the case before the court, it appeared that the Pan American Refining Corporation, a corporation organized under the laws of the State of Delaware and having its principal executive office in the City of New York, operated an oil refinery at Texas City in the State of Texas, from which point it sold and shipped its various refined products to customers in the State of Texas and, on the approved order of the office at New York, to customers outside of the State of Texas. The question submitted to the court for its consideration and determination was as to the construction to be placed upon this statute with respect to the question whether in the computation of the tax therein provided for, as against this corporation there should be included as business done by the company in Texas gross receipts from the sale of its refined products to customers both in and out of the State of Texas, or whether such computation should be made by including only the gross receipts from intrastate sales. As to this the secretary of state, the appellant in the case before the Texas Court of Civil Appeals, contended that since the statute allocates the taxable capital of the corporation based upon its gross receipts "from business done in Texas". it necessarily and properly included gross receipts from the corporation's intrastate refining business operated solely in Texas, regardless of the question whether such refined products were sold and shipped to customers in the state or out of the state. The court in its opinion stated that the statute imposing the tax there under consideration might be construed in accordance with the contention of the secretary of state; and it was conceded that the statute, so construed, would be constitutional. However, it appeared as a fact in the case that immediately after the enactment of the statute imposing this tax the taxing authorities of Texas, following an opinion of the attorney, general of that state, construed the statute as authorizing the inclusion as "business done in Texas" of gross receipts from intrastate sales only, and administered the law in accordance with this construction until a short time before the litigation in the decided case began. The court giving effect to this long continued administrative construction of the statute, and

apparently, solely by reason of such administrative construction of the statute, followed this construction of the statute and held that in the computation of the tax there should be included as business done by said corporation in Texas only gross receipts from sales made by the corporation to customers in Texas and that gross receipts on the sale and shipment of refined products to customers out of the state should be excluded in making such computation.

As above noted, no question was apparently made as to the constitutionality of the statute under the construction contended by the secretary of state, the appellant in said case, for it was conceded that the statute would be constitutional under this construction of its provisions. The case was decided in favor of the taxpayer, not on the view that the inclusion in the tax base of gross receipts from interstate sales made by it from its plant at Texas City would be unconstitutional, but upon the ground that the statute as uniformly construed by the taxing authorities of the state charged with the administration of the law did not intend to include gross receipts from sales of this kind.

Aside from the fact that the corporation franchise tax here in question under the laws of Ohio is measured with respect to the business of the appellant corporation in this state by the value of the sales made from its Cleveland plant, and not, as in the Texas case, by the gross receipts of the corporation from sales made by it from its plant in that state, and aside from the significant distinction that the tax here under consideration is measured not only by the business done by the corporation in Ohio, but likewise by the property owned and used by it in this state, it appears as a fact of such notoriety as to be the subject of judicial knowledge that ever since the original enactment of the corporation franchise tax law of this state in the year 1902 the taxing authorities of this state in the administration of said law,

following opinions of attorneys general of Ohio, have uniformly construed this law so as to authorize and require the inclusion as business done by a manufacturing corporation in this state the value of sales of products from its manufacturing plant here located, whether such sales were made to customers in the State of Ohio or elsewhere. And inasmuch as, in our view, the statute so construed and applied is constitutional, we do not feel authorized to depart from the construction thus placed upon the statute providing for this tax and by process of judicial legislation give effect to another and more limited construction of this statute.

We are of the opinion, therefore, that the Tax Commissioner did not err in including in the numerator of the business fraction used by him in the computation of appellant's corporation franchise tax for the year 1939, the value of all sales of its manufactured products made by said corporation from its plant at Cleveland, Ohio, whether the sale of such products were made to customers in the State of Ohio or to customers out of said state.

In the consideration and determination of the questions above noted presented on the appeal of the appellant herein, we are not unmindful of the fact that the appellant is a Pennsylvania corporation having its principal office in the City of Pittsburgh in said state, and that during the years 1938 and 1939 and at all other times here in question "contracts for the sale by the Company of merchandise were made by the Company at its Pittsburgh office, and all customers' orders for the purchase of merchandise from the Company, if accepted, were accepted by the Company at its Pittsburgh office, and all collections for goods sold were made by the Company's Pittsburgh office". Although in this situation it may be said that all contracts of sale of the appellant's products, whether the same were manufactured in Ohio or elsewhere, were made in the

State of Pennsylvania, and any and all credits accruing to the company by reason of such sales would be taxable as intangible personal property under the laws of that state, Virginia v Imperial Sales Company, 293 U. S. 15; Wheeling Steel Corporation v Fox, 298 U. S. 193, these facts do not alter or otherwise affect the further fact that the appellant is doing business in Ohio and is for this reason subject to the taxing power of this state with respect to business done and property owned and used by the company in this state. Neither is it material in this view that the gross receipts from the sale of the company's products manufactured in Ohio and elsewhere accrue to the company at its Pittsburgh office; for, as above noted, the tax here in question under the Ohio law is not measured in any respect by the gross receipts of the company from the sale of its products, but with respect to the business done by it in this state such tax is measured by the value of the sales made from its manufacturing plant in this state; and, as above noted, this factor of the value of sales so made is one which is competent for the state to use in determining that part of the tax attributable to business done by the corporation in this state. In this connection it is pertinent to note that although in legal contemplation all contracts of sale of appellant's manufactured products were made at the office of the company in Pittsburgh, the sales here in question, the value of which was used by the Tax Commissioner in computing this tax, were made in Ohio; for, except as to specific or identified goods, a contract for the sale of goods does not constitute a sale of the same; and ordinarily and in the usual course of business of the sale of manufactured products on purchase orders, a sale of the goods is not effected until such goods have been segregated from the mass or stock of goods in the factory and delivered to the customer or to a carrier for shipment to such customer. 55 Corpus Juris, p. 542; **Village of Belle-**fontaine v Vassaux, 55 Oh St 323. It thus appears that the sales here in question, as distinguished from the contracts therefor, were made from the manufacturing plant of the appellant corporation at Cleveland, Ohio; and on the consideration above noted, the value of such sales was properly used by the Tax Commissioner in determining the proportionate part of the appellant's business done in this state. Moreover, as to a manufacturing corporation, it may be said that inasmuch as the value of the sales of the products manufactured by the corporation in Ohio is taken only as a measure (in part) of the privilege or franchise under which the corporation does business in this state, it is immaterial whether such sales are effected in this state or out of the state. American Mfg. Co. v St. Louis, 250 U. S. 459.

As a consideration assumed to be pertinent in the disposition of the questions above noted and discussed, and likewise, apparently, as an independent ground of error on the part of the Tax Commissioner in computing the tax here in question, the appellant contends that the inclusion of the value of the sales made by it from its manufacturing plant in this state and, more particularly, of those made to customers in other states, resulted in the allocation to Ohio of an unfair and excessive amount of taxes; and in support of its claim that such allocation was illegal the appellant cites the case of Hans Rees' Sons v N. C., 283 U. S. 123, 75 L. Ed. 879. This case is one which arose under an income tax law of the State of North Carolina, and the holding of the court was, in effect, that a state income tax upon a corporation conducting its business as a unitary enterprise in several states is invalid if it allocates a grossly unreasonable portion of the income of the corporation to the taxing state. The evidence in the case before the court showed that although in each of the tax years there in question only 17% of the corporation's income resulted from its manufacturing operations within the State of North Caro-

lina, the statutory formula applied by the commissioner of revenue of that state in determining the amount of income taxes payable by the corporation in that state resulted in the allocation to the State of North Carolina of an average of about 80% of the corporation's total income in said years.

As before noted herein, the tax here in question on the appeal now before this Board is as to the appellant a tax extended at the rate provided in §5499 GC, on the proportionate valuation of the issued and outstanding shares of stock of the appellant corporation represented by the business done and by the property owned and used by it in Ohio. As before noted, the net worth of the appellant corporation represented by the total value of its issued and outstanding shares of stock for the tax year here in question was and is the sum of $180,408,175.00. Applying the formula provided by §5498 GC, and measuring the business done by the corporation in Ohio by the value of the sales of its finished products made from its manufacturing plant in this state, the Tax Commissioner determined the portion of the total value of the issued and outstanding shares of stock of the corporation represented by property owned and business done by it in this state to be $13,722,387.00; which amount is 7.6073% of the total value of the issued and outstanding shares of stock of said company. The tax extended on this valuation so found and determined at the rate provided in §5499 GC, is $13,722.39.

Aside from the consideration that the tax here in question is not one on the income of the corporation, we are unable to find on the facts of this case that application by the Tax Commissioner of the statutory formula and rule, above referred to, resulted in the allocation to this state for the purpose of this tax of an unreasonable portion of the net worth of the company as represented by the total value of its issued and outstanding shares of stock; and still less are we able to find that

the determination made by the Tax Commissioner was arbitrarily made, as is claimed by the appellant. Moreover, with respect to the amount of this corporation franchise tax assessed against the appellant, the question between the state and this taxpayer is whether such tax "exceed (s) the reasonable value of the privilege or franchise originally conferred or its continued annual value hereafter". **Southern Gum Company v Laylin, 66 Oh St 578.** And, following the language of the opinion of the court in the cited case,—where it appeared that the tax there in question was one-tenth of one per cent on the full amount of the subscribed or issued and outstanding stock of the corporation,—it may be said that the tax here in question is not unreasonable, and does not appear to be above the continuing value of the franchise of the appellant corporation to own property and do business in this state. In any event we are unable to say on the facts of this case that the tax assessed against the appellant does not have a reasonable relation to the value of the privileges granted to the appellant as a foreign corporation doing business in this state.

Finding no error in the proceedings relating to the determination and assessment of the tax here in question, the orders of the Tax Commissioner complained of in this appeal are affirmed.

BOARD OF TAX APPEALS.

### ENTRY

This cause and matter came on to be heard before the Board of Tax Appeals on the appeal of Aluminum Company of America, the appellant above named, from a corrected corporation franchise tax assessment made against it as a foreign corporation by the Tax Commissioner under date of November 8, 1939, and from an order of the Tax Commissioner denying an application for review and correction filed by the appellant with respect to said assessment.

Said cause was heard by the Board of Tax Appeals upon a transcript of the proceedings of the Tax Commissioner relating to the determination and assessment of appellant's corporation franchise tax for said year, upon the stipulation of facts signed and filed by their respective counsel for the parties in the case, and upon the arguments and briefs of counsel; and the cause was submitted to said Board for its consideration and determination. Upon consideration thereof the Board finds that on March 31, 1939, the appellant, a corporation organized under the laws of the State of Pennsylvania and engaged in the business of manufacturing and selling of aluminum and aluminum products in the State of Ohio and elsewhere, filed its annual corporation franchise tax report for said year, as required by the provisions of §5495-2 GC; which report as to the information therein contained was in manner and form as required by §5497 GC. In this report the appellant separately stated the value of its property, real and personal, which was owned and used by it in Ohio, and that owned and used by it outside of Ohio; and likewise set out therein its liabilities (less capital and surplus) as of January 1 of said year. On the information thus set out in appellant's report the Tax Commissioner determined the value of the issued and outstanding shares of stock of said corporation as provided in §5498 GC, and fixed such value at the sum of $180,408,175.00. Applying the property fraction indicated by the fair value of appellant's property in Ohio as against the fair value of that owned and used by it in Ohio and elsewhere and, likewise, the business fraction indicated by the value of the business done by the corporation in this state (as determined by the Tax Commissioner) as against the total value of the business of the corporation wherever transacted as set out in appellant's report, the Tax Commissioner determined the taxable valuation of the issued and outstanding shares of stock of the corporation represented by the property owned and business done by it in this state, and found such taxable value to be $13,-722,387.00. After the Tax Commissioner by the application of the property and business fractions above stated, had determined the taxable value of the issued and outstanding shares of the stock of the corporation represented by property owned and business done by the corporation in this state, and after the franchise tax of one-tenth of one per cent had been extended against such valuation as provided in §5499 GC, the appellant acting under the authority of §5500 GC, filed an application for a review and correction of the determination theretofore made by the Tax Commissioner of the value of the issued and outstanding shares of stock of the corporation represented by the property owned and business done by the corporation in this state. Following the filing of said application for review and correction the Tax Commissioner redetermined the valuation of the issued and outstanding shares of the stock of the corporation represented by the property owned and business done by the corporation in Ohio by the application of the property fraction, above noted, and a business fraction determined by a formula suggested by appellant and set out in its application for review and correction; which method of computation gave a valuation to that part of the issued and outstanding shares of stock of the corporation represented by property owned and business done by the corporation in this state in the sum of $8,999,481.00, upon which valuation the franchise tax extended at the rate provided for in §5499 GC, was $8,999.48. The franchise tax of the appellant for the year 1939 was tentatively computed by the Tax Commissioner on this basis and the amount of tax thus determined was paid by the appellant under an agreement by and between the appellant and the Tax Commissioner that the determination of the corporation's franchise tax on this basis for the year 1939 and its payment by said company was without prejudice to the right of the Tax Commissioner to make a further com-

putation of the franchise tax of the corporation for said year, and without prejudice to the right of the appellant to contest the validity of any increased assessment which might result from such further computation by the Tax Commissioner.

Thereafter on or about November 8, 1939, the Tax Commissioner on the facts and figures set out in appellant's report, made a corrected and final determination of the valuation of the issued and outstanding shares of stock of the corporation represented by the property owned and used and by business done by the corporation in this state; and determined such valuation by the use of the property fraction, above stated, (as to the correctness of which no question is made in this case) and of a business fraction determined by the Tax Commissioner by including in the numerator of such business fraction the value of the sales made during the year 1938 of products which, as found by the Tax Commissioner, were manufactured by the appellant at its manufacturing plant in this state ($8,710,582.00), and by including in the denominator of the fraction the value of the sales made by the corporation during said year of products manufactured by it in Ohio and elsewhere ($71,147,722.00). The business fraction thus obtained was the same as that used in the original computation of the franchise tax to be paid by said corporation for said year; and the application of this fraction together with the property fraction above noted resulted in a tax assessment in the amount of $13,722.39; which amount was and is $4,722.91 in excess of that previously determined by the Tax Commissioner and paid by the appellant as aforesaid. The appeal of the appellant herein is from this corrected assessment made by the Tax Commissioner, which resulted in the increase herein complained of.

The Board of Tax Appeals on consideration of the issues of law and fact in this case, finds no error in the proceedings of the Tax Commissioner by which said officer found and determined that the proportionate part of the value of the issued and outstanding shares of stock of the appellant corporation represented by property owned and used and business done by said corporation in this state was $13,722,387.00, and upon which valuation a tax at the rate prescribed by §5499 GC, was extended.

It is, therefore, by the Board of Tax Appeals considered and ordered that the proceedings and orders of the Tax Commissioner complained of in this appeal be, and the same hereby are, affirmed.

I hereby certify the foregoing to be a true and correct copy of the action of the Board of Tax Appeals of the Department of Taxation, this day taken, with respect to the above matter.

HARRY J. ROSE,
Secretary.